Christopher B. Healy, Esq. (NJ Bar No. 013212005)
**BATHGATE, WEGENER & WOLF, P.C.**
**One Airport Road**
**P.O. Box 2043**
**Lakewood, New Jersey 08701**
**Phone: 732-363-0666**
*Counsel for Plaintiffs*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

### CASE NO. _____

EDWARD LEO, AS EXECUTOR OF THE ESTATE
OF DAWN L. LEO, CLIFFORD J. MARCHION,
and DONNA MARCHION, on behalf of themselves
and all others similarly situated,

                     Plaintiffs,

      v.

NATIONSTAR MORTGAGE LLC OF DELAWARE
D/B/A CHAMPION MORTGAGE COMPANY;
GREAT AMERICAN ASSURANCE COMPANY; and
WILLIS OF OHIO, INC. D/B/A LOAN PROTECTOR
INSURANCE SERVICES,

                Defendants.

**CLASS ACTION COMPLAINT**

**JURY DEMAND**

      Plaintiffs Edward Leo, as Executor of the Estate of Dawn L. Leo, Clifford J. Marchion, and Donna Marchion, file this class action complaint, on behalf of themselves and all others similarly situated, against Defendants Nationstar Mortgage LLC of Delaware d/b/a Champion Mortgage Company ("Champion"), Great American Assurance Company ("Great American"), and Willis of Ohio, Inc. d/b/a Loan Protector Insurance Services ("Loan Protector") (collectively "Defendants").

**PARTIES**

    1.    Plaintiff Edward Leo is the Executor of the Estate of Dawn L. Leo ("Leo") which

was charged for force-placed insurance on the deceased Dawn Leo's home in Cape May, New Jersey by Defendant Champion.  Pursuant to their exclusive arrangement and the master policy in place, Champion purchased the force-placed insurance coverage from Great American in 2015, 2016, and 2017.  All beneficiaries of the Estate of Dawn L. Leo have agreed to pursuit of this litigation.  Plaintiff is a citizen of the State of New Jersey.

2.       Plaintiffs Clifford J. Marchion and Donna Marchion were charged for force-placed insurance on their home in North Carolina by Defendant Champion.  Pursuant to their exclusive arrangement and the master policy in place, Champion purchased the force-placed insurance coverage from Great American in 2016.  The Plaintiffs are citizens of the State of North Carolina.

3.       Nationstar Mortgage LLC d/b/a Champion Mortgage Company ("Champion") is one of the largest mortgage servicers in the United States. Champion is a division of Nationstar and specializes in servicing reverse mortgage products, including servicing mortgages within this district.  Champion is a Delaware limited liability company with two members: (1) Nationstar Sub1 LLC ("Sub1") (99%) and (2) Nationstar Sub2 LLC ("Sub2") (1%).  Both Sub1 and Sub2 are Delaware limited liability companies.  Sub1 and Sub2 are both 100% owned by NSM Holdings, a publicly traded Delaware corporation.  Therefore, Champion is a citizen of the state of Delaware and otherwise *sui juris*.  Champion specializes in servicing "reverse mortgages"— loans available to homeowners 62 years or older that allow them to convert part of the equity in their homes into cash.  A reverse mortgage or Home Equity Conversion Mortgage ("HECM") allows homeowners to borrow against the equity in their homes while still continuing to live there and keep the title to their homes. Borrowers are responsible for property taxes and homeowner's insurance, and for maintenance costs on the home. Reverse mortgages allow elders to access the home equity and defer payment of the loan until they pass away, sell, or move out

of the home. For these reasons, the reverse mortgage products Champion services are overwhelming targeted towards and utilized by elderly retirees.

4.      Great American Assurance Company ("Great American") is a wholly-owned subsidiary of Great American Insurance Company, which is in turn a wholly-owned subsidiary of American Financial Group.  Great American is an Ohio Corporation with its principal place of business in Cincinnati, Ohio.  Great American writes force-placed insurance policies throughout the United States, including within this district.

5.      Defendant Willis of Ohio, Inc. d/b/a Loan Protector Insurance Services ("Loan Protector") is an Ohio corporation with its principal place of business in Colon, Ohio.   It provides lender placed insurance and insurance tracking services to the mortgage servicing industry.  Loan Protector provides lender placed insurance and outsourced insurance tracking programs to residential and commercial mortgage lenders and servicers across the United States. Loan Protector contracts with servicers and lenders to act as a force-placed insurance vendor. During the relevant time periods described in this Complaint, Loan Protector contracted as a force-placed insurance vendor with Champion.  Upon information and belief, Loan Protector, along with Great American, tracks loans in Champion's mortgage portfolio, handles customer service duties related to force-placed insurance, and issues certificates from the force-placed insurance master policy on properties when a borrower's insurance has lapsed.  At all relevant times described in this complaint, Loan Protector was acting as an agent, servant, employee, partner, and joint venturer of Defendants Champion and Great American.  Loan Protector had actual or constructive knowledge of the acts of each of these Defendants, and ratified, approved, joined in, acquiesced in, or authorized the wrongful acts of each co-defendant, and retained the benefits of said wrongful acts.  Loan Protector was a direct, necessary, and substantial participant in the common course of conduct complained of herein, and was aware of its overall contribution

3

to and furtherance of the conspiracy and common course of conduct.  Loan Protector conducts business throughout the United States, including New Jersey.

## NATURE OF THE CASE

6.     Plaintiffs file this class action complaint to redress the wrongful conduct of Champion, Great American, and Loan Protector in manipulating the force-placed insurance market through collusive agreements involving kickback arrangements and other forms of improper compensation.  Plaintiffs and a proposed nationwide class of Champion borrowers seek to recover damages they have suffered as a result of Champion, Great American, and Loan Protector's standard practice of charging borrowers undisclosed and illegitimate costs in connection with force-placed insurance.

7.     Defendants engaged in a pattern of unlawful and unconscionable profiteering and self-dealing in their purchase and placement of force-placed insurance coverage throughout the country and in New Jersey.  In exchange for providing Great American and Loan Protector with the exclusive right to monitor the entire Champion loan portfolio and force-place their own insurance coverage, Great American provided Champion with kickbacks that Defendants disguise as legitimate compensation.  These kickbacks include, but are not limited to, one or more of the following: (1) unearned "commissions" paid to Champion or an affiliate for work purportedly performed to procure individual policies; (2) "expense reimbursements" allegedly paid to reimburse Champion for expenses it incurred in the placement of force-placed insurance coverage on homeowners; (3) payments of illusory reinsurance premiums that carry no commensurate transfer of risk; and (4) free or below-cost mortgage-servicing functions that Loan Protector and Great American perform for Champion that often have nothing to do with the placement of insurance coverage.  Because of these kickbacks, Champion receives a rebate on the cost of the force-placed insurance; however, Champion homeowners ultimately bear the cost

1004392

of these kickbacks because Defendants do not pass on these rebates to the borrower. The charges for force-placed insurance are deducted from borrowers' escrow accounts and Defendants attempt to disguise the kickbacks as legitimate when, in fact, they are unearned, unlawful profits.

8.     This action seeks redress for injuries resulting directly from Defendants' force-placed insurance practices.  Plaintiffs do not challenge Champion's contractual right to obtain force-placed insurance to protect its interest in Plaintiffs' loans, nor do they challenge the insurance rates filed by Great American, but instead challenge the manner in which Champion has manipulated the force-placed insurance process to enrich itself, Loan Protector, and Great American at the expense of Plaintiffs and the Class, and in violation of its mortgage agreements.[1]

9.     All mortgage lenders' and servicers' force-placed insurance schemes, including Champion's, operate in a materially similar fashion.  When a homeowner's voluntary insurance policy lapses, the mortgage servicer force-places insurance on the property and charges the borrower the amount that the servicer purportedly paid to the insurer.  Borrowers are told they will be charged the cost of coverage and contract to do so, but in fact pay an amount greater than what the mortgage servicer, here Champion, ultimately pays for the force-placed insurance.  This is because after the servicer pays the insurer for the force-placed coverage, the insurer, Great American here, kicks back a percentage of the payment, through Loan Protector, to the servicer or one of its affiliates.  The kickback essentially provides a rebate on the cost of the insurance coverage, reducing its cost of coverage.  The benefit of that rebate is not, however, passed on to the borrower. As such, the servicer ultimately charges the borrower more than the cost of coverage.

---

[1] *See Burroughs v. PHH Mortg. Corp.*, No. 15-cv-6122, 2016 WL 1389934, at *4 (D.N.J. Apr. 8, 2016) (following Third Circuit precedent *Alston v. Countrywide Financial Corp.*, 585 F. 3d 753 (3d Cir. 2009), denying motion to dismiss and holding that the "filed-rate doctrine" did not bar

10.     The amounts charged to borrowers in excess of the cost of coverage are disguised as legitimate costs.  These kickbacks, which are described in greater detail below, not only allow the insurer to secure an exclusive relationship with the mortgage lender or servicer and keep the market closed, but also provide the participants in the scheme with millions of dollars in ill-gotten gains—all at borrowers' expense.

11.     The amounts charged to the borrowers by Champion for forced coverage have little or nothing to do with the risk insured or the value of the property, and are purely a function of this kickback scheme.  This action seeks compensation for borrowers who have been victimized by this practice and an end to this illegal scheme.

12.     At all relevant times, Champion purchased force-placed insurance exclusively from Great American pursuant to a longstanding agreement whereby Great American provided coverage for the entire Champion portfolio of mortgage loans under a master policy.  Loan Protector facilitates the arrangement by performing mortgage servicer functions at below cost, including tracking the loans in the Champion portfolio for lapses in insurance, and notifying Great American of any lapse so a certificate can be issued under the master policy.

13.     Defendants' arrangement returns a significant financial benefit to Champion and its affiliates that is unrelated to any contractual or bona fide interest in protecting Champion's interest in the loan.  Pursuant to its agreement, Champion purchases high-priced force-placed insurance coverage from Great American, and in exchange, Champion receives kickbacks from Great American and Loan Protector disguised as unearned "commissions," ceded premiums for riskless reinsurance, subsidies for below-cost mortgage servicing functions (that often have nothing to do with providing insurance coverage), or illusory "expense reimbursements," among

similar claims and allegations, including RICO, as those brought here); *see also Santos v. Carrington Mortgage Services, LLC,* 2015 WL 4162443, No. 15-cv-864 (D.N.J.) (same)).

1004392

other things that amount to a rebate on the cost to Champion.  Champion then charges borrowers the full, pre-rebate amount initially paid by Champion claiming it to be Champion's cost of coverage.

### The Force-Placed Insurance Industry

14.    Lenders and mortgage servicers, like Champion here, force-place insurance coverage when a borrower fails to obtain or maintain proper hazard, flood, or wind insurance coverage on property that secures a loan.  Under the typical mortgage agreement, if the insurance policy lapses or provides insufficient coverage, the lender has the right to force-place coverage on the property to protect its interest in the loan and to charge the borrower the cost of coverage.

15.    Force-placed insurance schemes, like the one at issue here, take advantage of the discretion afforded to the lenders and servicers in standard form mortgage agreements.  The mortgage agreements typically require the borrower to carry hazard insurance sufficient to cover the lender's interest in the property against fire and other perils.  If a homeowner's "voluntary" policy lapses, the mortgage agreement allows the lender to "force place" a new policy on the property at the borrower's expense.

16.    These schemes also violate the mortgage contract's express terms.  The borrower contracts to compensate the lender for the actual cost that the lender or servicer pays the insurer for forced coverage, but is then charged more than the lender or servicer actually paid.

17.    Force-placed insurance providers, like Great American here, enter into exclusive relationships with mortgage lenders and servicers to provide the force-placed policies.  To maintain their exclusive relationships with these lenders and servicers, the force-placed insurers, using an insurance agency like Loan Protector as a conduit, pay them unearned "kickbacks," often as a percentage of the force-placed premiums that mortgage lenders and servicers pay; together with Loan Protector offer subsidized mortgage servicing functions; enter into lucrative

7

10O4392

captive reinsurance deals with them; and/or provide other financial benefits not attributable to the cost of insuring the property.

18.     During a 2012 hearing on force-placed insurance at the National Association of Insurance Commissioners ("NAIC"), Mr. Birny Birnbaum, an expert on the force-placed insurance market, illustrated the staggering growth in profits that force-placed insurance schemes have reaped in recent years:[2]

**LPI Premiums Have Quadrupled Since 2004**

| Year | Gross Written Premium ($ Millions) | Net Written Premium ($ Millions) |
|---|---|---|
| 2004 | $1,485 | $796 |
| 2005 | $1,832 | $919 |
| 2006 | $2,163 | $1,074 |
| 2007 | $3,058 | $1,647 |
| 2008 | $4,000 | $2,209 |
| 2009 | $5,181 | $3,049 |
| 2010 | $5,915 | $3,223 |
| 2011 | $5,692 | $3,450 |
| 2004–2011 | $29,326 | $16,368 |

2009-2011 GWP Understated, Reporting Errors by QBE

CEJ LPI Presentation to NAIC                    13                    August 9, 2012

19.     It is no surprise that these practices have come under increased scrutiny in recent years by the government and regulators:

- At hearings before the New York Department of Financial Services ("NYDFS") on May 17, 2012 related to the force-placed insurance market, the Superintendent of Financial Services, Benjamin Lawsky, stated that the Department's initial inquiry uncovered "serious concerns and red flags" which included: 1) exponentially higher premiums, 2) extraordinarily low loss ratios, 3) lack of competition in the market, and 4) tight relationships between the banks, their subsidiaries, and insurers.  He went on to state:

  > In sum when you combine [the] close and intricate web of relationships between the banks and insurance companies

---

[2] This graph and the ones that follower are from Mr. Birnbaum's presentation to the NAIC on August 9, 2012.  The presentation is available at: http://www.naic.org/documents/committees_c_120809-public_hearing_lender_placed-insurancepresentation_birnbaum.pdf.

10O4392

on the one hand, with high premiums, low loss ratios, and lack of competition on the other hand, it raises serious questions . . . .

- The Consumer Financial Protection Bureau's new regulations on force-placed insurance became final on January 17, 2013 and prohibit servicers of federally regulated mortgage loans from force-placing insurance unless the servicer has a reasonable basis to the believe the borrower's insurance has lapsed and require the servicer to provide three notices of the force-placement in advance of issuing the certificate of insurance.[3]

- On December 18, 2013, Fannie Mae issued its Servicing Guide Announcement related to force-placed insurance that, among other things, prohibits servicers from including any commissions, bonuses, or other incentive compensation in the amounts charged to borrowers for force-placed insurance and further requires that the force-placed insurance carrier cannot be an affiliated entity of the servicer.[4]

20.    Indeed, in 2012, after investigating the forced placed insurers in California, the California Department of Insurance required Great American to file new rates which resulted in a rate reduction of 28%.

21.    Defendants' self-dealing and collusion in the force-placed insurance market has caused substantial harm to the named Plaintiffs and the proposed Class they seek to represent. This class action seeks to redress that harm on behalf of this Class of consumers and to recover all improper costs they have incurred related to the forced placement of insurance by the Defendants.

## JURISDICTION AND VENUE

22.    This Court has jurisdiction over this action pursuant to the Class Action Fairness Act of 2005 ("CAFA"), Pub. L. No. 109-2, 119 Stat. 4 (codified in various sections of 28

---

[3] See Consumer Financial Protection Bureau Proposes Rules to Protect Mortgage Borrowers" available at http://www.consumerfinance.gov/pressreleases/consumer-financial-protection-bureau-proposes-rules-to-protect-mortgage-borrowers/

[4] See https://www.fanniemae.com/content/announcement/svc1327.pdf

9

U.S.C.).

23.     Plaintiff Edward Leo, as Executor of the Estate of Dawn L. Leo, is a citizen of New Jersey who owns property in New Jersey on which insurance coverage was forced by Defendant Champion through its exclusive arrangements with Loan Protector and Great American.

24.     Plaintiffs Clifford J. Marchion and Donna Marchion are citizens of North Carolina who own property in North Carolina on which insurance coverage was forced by Defendant Champion through its exclusive arrangements with Loan Protector and Great American.

25.     Champion, Great American, and Loan Protector are registered to do business in New Jersey.  The amount in controversy exceeds $5,000,000 and there are at least one hundred members of the putative class.

26.     This Court has subject-matter jurisdiction over this action because Plaintiffs' claims arise under the federal Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(d), according to the statute's jurisdictional statement, 18 U.S.C. § 1964.  Further, pursuant to 28 U.S.C. § 1331, this Court has subject-matter jurisdiction based on Plaintiffs' claims for violation of the federal Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq.*

27.     This Court has further jurisdiction over Defendants because they either are foreign corporations authorized to conduct business in New Jersey, are doing business in New Jersey and have registered with the New Jersey Secretary of State, or do sufficient business in New Jersey, have sufficient minimum contacts with New Jersey, or otherwise intentionally avail themselves of the New Jersey consumer market through the promotion, marketing, sale, and service of mortgages or other lending services and insurance policies in New Jersey.  This purposeful availment renders the exercise of jurisdiction by this Court over Defendants and their

affiliated or related entities permissible under traditional notions of fair play and substantial justice.

28.     In addition, this Court has subject-matter jurisdiction under CAFA because the amount in controversy exceeds $5 million and diversity exists between Plaintiffs and Defendants.  28 U.S.C. § 1332(d)(2).  Further, in determining whether the $5 million amount in controversy requirement of 28 U.S.C. § 1332(d)(2) is met, the claims of the putative class members are aggregated.  28 U.S.C. § 1332(d)(6).

29.     Venue is proper in this forum pursuant to 28 U.S.C. § 1391 because Defendants transact business and may be found in this District and a substantial portion of the practices complained of herein occurred in the Southern District of New Jersey.

30.     All conditions precedent to this action have occurred, been performed, or have been waived.

## FACTUAL ALLEGATIONS

31.     The standard form mortgage agreements for loans owned or serviced by Champion include a provision requiring the borrower to maintain hazard insurance coverage, flood insurance coverage if the property is located in a Special Flood Hazard Area as determined by the Federal Emergency Management Agency, and wind insurance on the property securing the loan.  In the event that the insurance lapses, the standard form mortgage agreements permit Champion to obtain force-placed coverage to protect the its interest in the loan and to charge the cost of the insurance to the borrower rather than declare the borrower in default.

32.     What is unknown to borrowers, and not disclosed in the standard form mortgage agreements, is that Champion has exclusive arrangements with Loan Protector and Great American to manipulate the force-placed insurance market and artificially inflate the charges to Plaintiffs and the Class members.  The charges are inflated to provide Champion with kickbacks

1004392

disguised as "commissions," or "expense reimbursements," or to provide Champion with lucrative reinsurance arrangements that include unmerited charges, and to provide other financial benefits in the form of below-cost mortgage servicing functions that are not attributable to the cost of insuring the individual property.

### Champion and Great American's Force-Placed Insurance Scheme

33.   Great American and Loan Protector have exclusive arrangements with Champion to monitor Champion's mortgage portfolios, perform additional mortgage servicing functions (obligations properly borne by Champion), and provide force-placed insurance coverage.   In addition to the subsidized mortgage services it receives from the Loan Protector and Great American, as set forth in detail below, Champion is "kicked back" a percentage of the force-placed premium.

34.   The scheme works as follows:   Champion purchases a master insurance policy from Great American that covers the entire Champion portfolio of mortgage loans.   In exchange, Great American is given the exclusive right to force insurance on property securing a loan within the portfolio when the borrower's insurance lapses or the lender determines the borrower's existing insurance is inadequate.

35.   Great American and Loan Protector monitor Champion's entire loan portfolio for lapses in borrowers' insurance coverage.   Once a lapse is identified, Great American or Loan Protector sends a cycle of notices to the borrower in Champion's name, stating that it will purchase insurance for the property, for which the borrowers will be financially responsible, and force-place it on the property.   In reality, however, the master policy is already in place and Champion does not purchase a new policy on the individual borrower's behalf.   Rather, a certificate of insurance from the master policy is automatically issued by Great American or Loan Protector.   The notice further states that the insurance charges will be applied to the

12

borrower's loan, plus interest.

36.     Loan Protector acts as an agent for both Champion and Great American in the procurement and placement of Great American's force-placed insurance.  Loan Protector also helps Champion administer its force-placed program at below-cost.

37.     The letters or notices sent to borrowers are processed pursuant to an automated system used by Great American and Loan Protector that generates and sends the letters at predetermined times.  The letters indicate an address for borrowers to submit proof of insurance or correspondence to Champion; however, the address is actually for a Great American location because Great American and Loan Protector are actually performing these services for Champion.  Each borrower is subject to Defendants' automated system and receives materially the same letters described above.

38.     Once a certificate is issued pursuant to the pre-existing master policy, coverage is forced on the property and Champion charges the borrower an amount it attributes to the "cost" of the Great American force-placed insurance, which is either deducted from the borrower's mortgage escrow account or added to the balance of the borrower's loan.[5]  The borrower's escrow account is depleted irrespective of whether other escrow charges, such as property taxes, are also due and owing.

39.     No individualized underwriting ever takes place for the force-placed coverage. Insurance is automatically placed on the property and the inflated amounts, including the unlawful kickbacks, are charged to the borrower.

40.     To fund the force-placed insurance scheme, Champion pays Great American for the certificate of insurance, which issues from the already-existing master policy.  Champion's

---

[5]  On some occasions, when a borrower does not have an escrow account, the lender creates an escrow account with a negative balance and charges the borrower to bring the balance to zero.

10O4392

obligation to pay Great American for the force-placed insurance arises from the agreements between Champion and Great American, which govern the mortgage servicing functions that Great American and Loan Protector perform as well as the procurement of the master policy, and are executed and already in place before the borrower's coverage lapses.

41.     Once coverage has issued and Champion has paid for the insurance, Great American kicks back a set percentage of the premium to Champion, on some occasions through Loan Protector, as a "commission" or an "expense reimbursement."  The money paid back to Champion and/or its affiliates is not given in exchange for any services provided by them; it is simply grease paid to keep the force-placed machine moving.  In an attempt to mask the kickbacks as legitimate, Great American or Loan Protector may disclose in their form letters to the borrower that Champion may earn "commissions" as a result of the forced placement of new coverage, or that Champion incurred "costs" as a result of the force-placement of insurance, or that a "fee" is due to an agency.

42.     The payment is not compensation for work performed; it is an effective rebate on the premium amount owed by Champion, reducing the cost of coverage that Champion pays to Great American.   The "commissions" or "expense reimbursements" are not legitimate reimbursements for actual costs, nor are they payments that have been earned for any work done by Champion or an affiliate related to the placement of the insurance; they are unlawful kickbacks to Champion for the exclusive arrangement to force-place insurance

43.     In reality, no work is ever done by Champion or Loan Protector to procure insurance for that particular borrower because the coverage comes through the master policy already in place and the procedures are automated.  Champion does not seek out insurance policies on borrower's behalf and has no involvement in the placing of the insurance or the collection of the charges from the borrower.  As a result, the amount paid is not a true

14

10O4392

"commission," no income is "earned," and Champion does not incur any "costs" in relation to the force-placement of insurance for any particular borrower.

44.   The NAIC has expressed concern with the "reverse competition" at play in the lender-placed insurance market whereby the insurers compete by offering mortgage lenders and servicers a share in the profits, rather than by offering lower prices.   On its website, the NAIC states:

> A key regulatory concern with the growing use of lender-placed insurance is "reverse competition," where the lender chooses the coverage provider and amounts, yet the consumer is obliged to pay the cost of the coverage.  Reverse competition is a market condition that tends to drive up prices to the consumers, as the lender is not motivated to select the lower price for coverage since the cost is born by the borrower.  Normally competitive forces tend to drive down costs for consumers.  However, in this case, the lender is motivated to select coverage from an insurer looking out for the lender's interest rather than the borrower.

*See* http://www.naic.org/cipr_topics/topic_lender_placed_insurance.htm.

45.   Champion also enters into exclusive agreements whereby Great American and Loan Protector provide mortgage servicing functions on Champion's entire loan portfolio at below cost.  These functions, which include, but are not limited, to activities such as "new loan boarding," "escrow administration," "customer service," and "loss draft services," are often not related to the provision of force-placed insurance and are performed at below cost as a way to keep the exclusive arrangement in place.  Indeed, Great American does not perform these services for a lender or servicer without also being the exclusive provider of force-placed insurance.  Loan Protector does not perform these services for a lender or servicer without also being the exclusive vendor for the procurement of force-placed insurance.

46.   Upon information and belief, Loan Protector is able to perform many of the mortgage servicing functions to Champion at below-cost because of the funds it receives from Great American from the force-placed insurance charges.

15

47.     The full cost of the servicing activities is added into the force-placed amounts which are then passed on to the borrower. Great American and Loan Protector are able to provide mortgage servicing functions at below cost because of the enormous profits they make from the amounts charged for force-placed insurance.   However, because insurance-lapsed mortgaged property generally comprises only 1-2% of the lenders' total mortgage portfolio, the borrowers, like Plaintiffs here, who are charged for the force-placed insurance unfairly bear the cost to service and monitor the entire Champion loan portfolio.   These charges, passed on to Plaintiffs and the proposed Class, are not properly chargeable to the borrower because they are expenses associated with the servicing of all the loans, and Champion is already compensated for these activities by the owners of the loans (e.g. Fannie Mae).

48.     Thus, the small percentage of borrowers who are charged for force-placed insurance shoulder the costs of monitoring Champion's entire loan portfolio, effectively resulting in a kickback.

49.     In addition, upon information and belief, Great American enters into essentially riskless "captive reinsurance arrangements" with Champion, or its affiliates, to "reinsure" the property insurance force-placed on borrowers.   An *American Banker* article illustrated this reinsurance problem using JPMorgan Chase's program with another lender placed insurer, Assurant, Inc., by way of example:

> JPMorgan and other mortgage servicers reinsure the property insurance they buy on behalf of mortgage borrowers who have stopped paying for their own coverage. In JPMorgan's case, 75% of the total force-placed premiums cycle back to the bank through a reinsurance affiliate. This has raised further questions about the force-placed market's arrangements.

Over a five year period, Chase has received $660 million in reinsurance payments and commissions on force-placed policies, according to New York's DFS[.]

16

10O4392

> Of every hundred dollars in premiums that JPMorgan Chase borrowers pay to Assurant, the bank ends up keeping $58 in profit, DFS staff asserted. The agency suggested the bank's stake in force-placed insurance may encourage it to accept unjustifiably high prices by Assurant and to avoid filing claims on behalf of borrowers, since that would lower its reinsurer's returns.
>
> The DFS staff also questioned the lack of competition in the industry, noting that Assurant and QBE have undertaken acquisitions that give them long-term control of 90% of the market.   Further limiting competition are the companies' tendency to file identical rates in many states, Lawsky and his staff argue.

J. Horwitz, *Chase Reinsurance Deals Draw New York Regulator's Attacks*, AM. BANKER, May18, 2012, *available at* http://www.americanbanker.com/issues/177_97/chase-reinsurance-deals- regulator-attack-1049460-1.html.

50.     Champion's reinsurance program, like those of other servicers, is simply a way to funnel profits from the force-placed scheme, in the form of ceded premiums, to Champion at the borrowers' expense.   While reinsurance can, and often does, serve a legitimate purpose, here it does not.   Champion and/or its affiliates enter into reinsurance agreements with Great American that provide that the insurer will return to Champion significant percentages of the premiums charged to borrowers by way of ceded reinsurance premiums to Champion affiliates – which in turn provide these premiums to Champion often in the form of "soft-dollar" or other credits.   The ceded premiums are nothing more than a kickback and a method for Champion to profit from the forced placement of new coverage.   Indeed, while Champion and/or its affiliates purportedly provided reinsurance, they did not assume any real risk.

51.     The amounts charged to borrowers are also inflated by the interest that accrues on the amounts owed for force-placed coverage.   When Champion adds the "cost" of the high-price force-placed insurance to a homeowner's mortgage balance, it thereby increases the interest paid over the life of the loan by the homeowner to the lender.

1O04392

52.     The actions and practices described above are unconscionable and undertaken in bad faith with the sole objective to maximize Defendants' profits at the expense of Plaintiffs and the other Class members. Borrowers who for whatever reason have stopped paying for insurance or are under-insured on mortgaged property, are charged amounts in excess of the servicer's cost of coverage.

53.     Borrowers have no say in the selection of the force-placed insurance carrier or the terms of the force-placed insurance policies and have no ability to seek out and purchase their own force-placed insurance policy.  Force-placed policies are commercial insurance policies intended to be sold to lenders and servicers and their terms are determined by the lender/servicer, here, Champion, the agent, Loan Protector, and the insurer, Great American.  Per the terms of their agreements, Champion has the obligation to pay Great American for the force-placed insurance not any individual borrower.  It is Champion and not the borrower that is the Named Insured on the force-placed policies, and no force-placed insurance policy is ever cancelled if borrower fail to pay Champion the amount it charges them for the "cost" it expended.

54.     Plaintiffs do not challenge Champion's right to force place insurance in the first instance, nor do they challenge the rates filed by Great American.  They challenge mortgage lenders' and servicers' abuse of discretion in purchasing force-placed insurance in violation of borrowers' mortgage agreements, as well as Defendants' manipulation of the force-placed insurance market.  The kickbacks paid to Champion provide it an effective rebate on the cost of force-placed insurance coverage that Champion does not pass on to its borrowers.  Servicers like Champion are financially motivated to select the insurer, like Great American, that offers it the best financial benefit in the terms of "commissions," "expense reimbursements," direct payments, discounted mortgage servicing, or debt forgiveness.

55.     This action is brought to put an end to Defendants' exclusive, collusive, and

18

10O4392

noncompetitive arrangements, and to recover for Plaintiffs the excess amounts charged to them beyond Champion's true cost of insurance coverage.  Plaintiffs seek to recover the improper charges passed on to them and other Champion borrowers nationwide through their claims for breach of contract, breach of the implied covenant of good faith and fair dealing, unjust enrichment, tortious interference with a contract or advantageous business relationship, and violations of the New Jersey Consumer Fraud Act, the Truth in Lending Act ("TILA"), and RICO.

### Plaintiff Edward Leo, as Executor of the Estate of Dawn L. Leo

56.     Dawn L. Leo took a reverse mortgage loan from World Alliance Financial Corp. in September 2008, for her property at 628 Broad Street, Cape May, New Jersey 08204.  At all times relevant to the allegations herein, her reverse mortgage loan was owned and/or serviced by Champion.

57.     Leo's mortgage provides as follows:

> 2. **Payment of Property Charges**. Borrower shall pay all property charges consisting of taxes, ground rents, flood and hazard insurance premiums, and special assessments in a timely manner, and shall provide evidence of payment to Lender, unless Lender pays property charges by withholding funds from monthly payments due to the Borrower or by charging such payments to a line of credit as provided for in the Loan Agreement.

> 3.     **Fire, Flood and Other Hazard Insurance**. Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire. This insurance shall be maintained in the amounts, to the extend and for the periods required by Lender or the Secretary of Housing and Urban Development ("Secretary"). Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

> ...

10O4392

5.   **Charges to Borrower and Protection of Lender's Rights in the Property**.  If Borrower fails to make these payments or the property charges required by Paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender or MERS may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in Paragraph 2.

To protect Lender's security in the Property, Lender shall advance and charge to Borrower all amounts due to the Secretary for the Mortgage Insurance Premium as defined In the Loan Agreement as well as all sums due to the loan servicer for servicing activities as defined in the Loan Agreement. Any amounts disbursed by Lender under this Paragraph shall become an additional debt of Borrower as provided for in the Loan Agreement and shall be secured by this Security Instrument.

Leo mortgage is attached here as **Exhibit A**.

58.   Dawn Leo passed away on May 11, 2014.

59.   Plaintiff Edward Leo was appointed as the Executor of the Estate of Dawn L. Leo on December 14, 2014.  *See* **Exhibit B**.

60.   Pursuant to the automated procedures in place and purporting to come from Champion, on April 7, 2015, Defendants sent a letter informing the Estate of Dawn Leo that Champion had purchased lender placed hazard coverage for the property.  The letter stated that the "cost of any insurance we purchase will be added to your loan balance ...."  The letter was accompanied by a document entitled Evidence of Insurance showing that a lender placed policy was purchased with Champion Mortgage its Successors and/or Assigns listed at the Mortgagee, Great American as the Insurer, and Loan Protector as the issuer. The policy had an Effective Date of January 21, 2015 and the annual premium was $1,521.00.

61.   The letter did not disclose any aspect of the secret and illegal compensation arrangement entered into by Great American, Loan Protector, and Champion, or inform the Estate that it would be charged illegitimate amounts beyond Champion's cost of coverage.

10O4392

62.    The Defendants sent similar letters to the Estate of Dawn Leo relating to the renewal of the force-placed insurance on January 21, 2016 and January 23, 2017. These letters informed Leo that "[y]ou will be billed for the cost of the insurance…." The annual premium for the 2016 policy was $1,521.00 and the annual premium for the 2017 policy was $1,453.00.

63.    Defendants' communications to Leo were false and misleading. Defendants represented in their letters that Champion was charging the amounts paid for the "cost" of the insurance. However, the charges imposed on Leo did not reflect Champion's true cost of coverage because Champion was receiving an effective rebate on the force-placed insurance through the kickback scheme described above. Champion, therefore, paid less for coverage than it represented to and charged Leo and the Class members.

64.    Defendants' communications to Leo were also misleading in that they represented that Champion "purchased" the individual insurance for the property through an agency, when an exclusive arrangement and master policy was already in place with Great American, and neither Champion nor any agency would, in fact, perform any additional work to procure coverage for Leo's property.

65.    It was never disclosed to Leo or the putative Class members that because of Defendants' kickback scheme, Champion would be receiving a rebate and effectively be paying less for the force-placed insurance coverage than it would charge Leo and the putative Class. Nor was it disclosed to Leo or the Class members that the amounts charged to them covered other illegitimate kickbacks and below cost mortgage servicing functions not properly charged to them.

66.    Leo paid and/or still owes the charges for the force-placed insurance in that the amounts for the insurance were added to the loan balance.

67.    There were no material differences between Defendants' actions and practices

1004392

directed to Leo and their actions and practices directed to the Class.

**Plaintiffs Clifford J. Marchion, and Donna Marchion (the "Marchion Plaintiffs")**

68.     The Marchion Plaintiffs took a reverse mortgage loan from First National Bank on June 26, 2012, on real property at 4164 Dowdy Lane, Kitty Hawk, North Carolina 27949.  At all times relevant to the allegations herein, the Marchion Plaintiffs' mortgage loan was owned and/or serviced by Champion.

69.     The Marchion Plaintiffs' mortgage provides as follows:

> 2.     **Payment of Property Charges**. Borrower shall pay all property charges consisting of taxes, ground rents, flood and hazard insurance premiums, and special assessments in a timely manner, and shall provide evidence of payment to Lender, unless Lender pays property charges by withholding funds from monthly payments due to the Borrower or by charging such payments to a line of credit as provided for in the Loan Agreement.

> 3.     **Fire, Flood and Other Hazard Insurance**. Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire. This insurance shall be maintained in the amounts, to the extend and for the periods required by Lender or the Secretary of Housing and Urban Development ("Secretary"). Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

> …

> 5.     **Charges to Borrower and Protection of Lender's Rights in the Property**.  If Borrower fails to make these payments or the property charges required by Paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender or MERS may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in Paragraph 2.

> To protect Lender's security in the Property, Lender shall advance and charge to Borrower all amounts due to the Secretary for the Mortgage Insurance Premium

as defined In the Loan Agreement as well as all sums due to the loan servicer for servicing activities as defined in the Loan Agreement. Any amounts disbursed by Lender under this Paragraph shall become an additional debt of Borrower as provided for in the Loan Agreement and shall be secured by this Security Instrument.

The Marchion Plaintiffs' mortgage is attached here as **Exhibit C**.

70.     Pursuant to the automated procedures in place and purporting to come from Champion, on November 6, 2015, Defendants sent a letter informing the Marchion Plaintiffs that Champion did not have evidence of Wind/Hurricane insurance coverage for their property. The letter warned that if evidence of insurance was not provided, Champion "may purchase insurance, as your expense, to protect [Champion's] interest in the property," and that "the cost of any insurance we purchase will be added to your loan balance…."

71.     Pursuant to the automated procedures in place and purporting to come from Champion, on December 7, 2015, Defendants sent a letter informing the Marchion Plaintiffs that Champion still had not received evidence of insurance, and threatened that, if such evidence was not provided, it may "purchase Wind/Hurricane insurance at your expense." The letter went onto state that the Marchion Plaintiffs would "be billed for the cost of any insurance [Champion] purchase…." The annual premium for said policy would be $3,645.00 and "will be charged to your account."

72.     Pursuant to the automated procedures in place and purporting to come from Champion, on January 4, 2016, Defendants sent a letter informing the Marchion Plaintiffs that it had purchased lender placed Wind/Hurricane coverage at the Marchion Plaintiffs' expense. The letter stated that the Marchion Plaintiffs would be "billed for the cost of any insurance" purchased. The letter was accompanied by a document entitled Evidence of Insurance showing that a lender placed policy was purchased with Champion Mortgage its Successors and/or Assigns listed at the Mortgagee, Great American as the Insurer, and Loan Protector as the issuer.

The policy had an effective date of October 30, 2015 and the annual premium was $3,645.00.

73.     Defendants' communications to the Marchion Plaintiffs were false and misleading.  Defendants represented in their letters to the Marchion Plaintiffs that Champion was charging them the amounts paid for the cost of the insurance.  However, the charges imposed on the Marchion Plaintiffs did not reflect Champion's true cost of coverage because Champion was receiving an effective rebate on the force-placed insurance through the kickback scheme described above.  Champion had, as such, paid less for coverage than it represented to and charged the Marchion Plaintiffs and the Class members.

74.     Defendants' communications to the Marchion Plaintiffs were also misleading in that they represented that Champion "purchased" the individual insurance for the property through an agency, when an exclusive arrangement and master policy was already in place with Great American, and neither Champion nor any agency would, in fact, perform any additional work to procure coverage for the Marchion Plaintiffs' property.

75.     It was never disclosed to the Marchion Plaintiffs or the putative Class members that because of Defendants' kickback scheme, Champion would effectively be paying less for the force-placed insurance coverage than it would charge the Marchion Plaintiffs and the putative Class.  Nor was it disclosed to the Marchion Plaintiffs or the Class members that the amounts charged to them covered other illegitimate kickbacks and below cost mortgage servicing functions not properly charged to them.

76.     The Marchion Plaintiffs paid for the charges for the force-placed insurance.

77.     There were no material differences between Defendants' actions and practices directed to the Marchion Plaintiffs and their actions and practices directed to the Class.

## CLASS ALLEGATIONS

### A.  Class Definition

24

10O4392

78.     Plaintiffs bring this action against Defendants pursuant to Rule 23 of the Federal

Rules of Civil Procedure on behalf of themselves and all other persons similarly situated.

Plaintiffs seek to represent the following Class and Subclass:

> ### (1) Nationwide class:
>
> All reverse mortgage borrowers who, within the applicable statutes of
> limitation, were charged for a force-placed hazard or wind insurance
> policy through Champion or its affiliates, entities, or subsidiaries.
> Excluded from this class are Defendants, their affiliates, subsidiaries,
> agents, board members, directors, officers, and/or employees.
>
> ### (2) New Jersey Subclass with Leo as the Class Representative:
>
> All New Jersey reverse mortgage borrowers who, within the applicable
> statutes of limitation, were charged for a force-placed hazard or wind
> insurance policy through Champion or its affiliates, entities, or
> subsidiaries.  Excluded from this class are Defendants, their affiliates,
> subsidiaries, agents, board members, directors, officers, and/or
> employees.

79.     Plaintiffs reserve the right to modify or amend the definition of the proposed

Class and Subclass before the Court determines whether certification is appropriate.

80.     Defendants subjected Plaintiffs and the respective Class members to the same

unfair, unlawful, and deceptive practices and harmed them in the same manner.

**B.  Numerosity**

81.     The proposed Class is so numerous that joinder of all members would be

impracticable.  Defendants sell and service hundreds of thousands of reverse mortgage loans and

insurance policies in the States of New Jersey, North Carolina, and nationwide.  The individual

Class members are ascertainable, as the names and addresses of all Class members can be

identified in the business records maintained by Defendants.  The precise number of Class

members number at least in the thousands and can only be obtained through discovery, but the

10O4392

numbers are clearly more than can be consolidated in one complaint such that it would be impractical for each member to bring suit individually.   Plaintiffs do not anticipate any difficulties in the management of the action as a class action.

### C.  Commonality

82.    There are questions of law and fact that are common to Plaintiffs' and Class members' claims.  These common questions predominate over any questions that go particularly to any individual member of the Class.  Among such common questions of law and fact are the following:

    a.   Whether Champion breached its mortgage contracts with Plaintiffs and the Class by selecting higher priced force-placed insurance policies in order to receive illegal kickbacks (in the form of unwarranted commissions, expense reimbursements, below-cost mortgage servicing, or reinsurance payments) and by charging Plaintiffs and the Class members more than the cost of coverage;

    b.   Whether Champion breached the implied covenant of good faith and fair dealing by entering into exclusive arrangements with selected insurers and/or their affiliates, which resulted in Plaintiffs and the Class members being charge more than the cost of coverage for force-placed insurance;

    c.   Whether Defendants manipulated the force-placed insurance procurement process in order to maximize their profits to the detriment of Plaintiffs and the Class members;

    d.   Whether Champion performed any work or services in exchange for the "commissions" or other forms of kickbacks it collected;

    e.   Whether Champion incurred any expenses in the placement of force-placed insurance on Plaintiffs' or the Class members' properties;

    f.   Whether the Defendants employed unconscionable commercial practices, misrepresentation, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with content that others rely upon such concealment, suppression or omission by their arrangement, which incentivizes Defendants to charge inflated and unnecessary fees for force-placed insurance, and therefore violates the New Jersey Consumer Fraud Act;

g. Whether Great American and Loan Protector intentionally and unjustifiably interfered with Plaintiffs' and the Class's rights under the mortgage contracts by inducing Champion to charge more for force-placed insurance coverage to Plaintiffs and the Class than it had paid because of the kickbacks and other financial windfalls, including steeply discounted administrative services Champion received;

h. Whether there was actually a transfer of risk under Defendants' purported reinsurance arrangement;

i. Whether Champion has been unjustly enriched at the expense of Plaintiffs and the Class; and

j. Whether Plaintiffs and the Class members are entitled to damages and/or injunctive relief as a result of Defendants' conduct.

### D. Typicality

83.    Plaintiffs are members of the Class they seek to represent.  Plaintiffs' claims are typical of the respective Class's claims because of the similarity, uniformity, and common purpose of Defendants' unlawful conduct.   Each Class member has sustained, and will continue to sustain, damages in the same manner as Plaintiffs as a result of Defendants' wrongful conduct.

### E. Adequacy of Representation

84.    Plaintiffs are adequate representatives of the Class they seek to represent and will fairly and adequately protect the interests of the Class.  Plaintiffs are committed to the vigorous prosecution of this action and have retained competent counsel, experienced in litigation of this nature, to represent them.   There is no hostility between Plaintiffs and the unnamed Class members.   Plaintiffs anticipate no difficulty in the management of this litigation as a Class action.

85.    To prosecute this case, Plaintiffs have chosen the undersigned law firms, which are very experienced in class action litigation and have the financial and legal resources to meet the substantial costs and legal issues associated with this type of litigation.

### F. Requirements of Fed. R. Civ. P. 23(b)(3)

10O4392

86.   The questions of law or fact common to Plaintiffs' and each Class member's claims predominate over any questions of law or fact affecting only individual members of the class.   All claims by Plaintiffs and the unnamed Class members are based on the force-placed insurance policies that Defendants unlawfully implemented and their deceptive and egregious actions involved in implementing the force-placed policy.

87.   Common issues predominate when, as here, liability can be determined on a class-wide basis, even when there will be some individualized damages determinations.

88.   As a result, when determining whether common questions predominate, courts focus on the liability issue, and if the liability issue is common to the class as is the case at bar, common questions will be held to predominate over individual questions.

### G.   Superiority

89.   A class action is superior to individual actions in part because of the non-exhaustive factors listed below:

(a) Joinder of all Class members would create extreme hardship and inconvenience for the affected customers as they reside all across the state;

(b) Individual claims by Class members are impractical because the costs to pursue individual claims exceed the value of what any one Class member has at stake.   As a result, individual Class members have no interest in prosecuting and controlling separate actions;

(c) There are no known individual Class members who are interested in individually controlling the prosecution of separate actions;

(d) The interests of justice will be well served by resolving the common disputes of potential Class members in one forum;

(e) Individual suits would not be cost effective or economically maintainable as individual actions; and

(f) The action is manageable as a class action.

### H.   Requirements of Fed. R. Civ. P. 23(b)(1) & (2)

90.   Prosecuting separate actions by or against individual Class members would create

1004392

a risk of inconsistent or varying adjudications with respect to individual Class members that would establish incompatible standards of conduct for the party opposing the Class.

91.   Defendants have acted or failed to act in a manner generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

## COUNT I

### BREACH OF CONTRACT
### (against Champion on behalf of the Nationwide Class and the New Jersey Subclass)

92.   Plaintiffs re-allege and incorporate paragraphs 1-91 above as if fully set forth herein and further alleges as follows.

93.   Plaintiffs and all similarly situated Class members have reverse mortgages that were owned and/or serviced by Champion.

94.   Plaintiffs' and these Class members' reverse mortgages are written on uniform mortgage forms and contain substantially similar provisions regarding force-placed insurance requirements and its placement by Champion.  The force-placed provisions from Plaintiffs' mortgages are set forth above and true and correct copies of the mortgage agreements are attached to this complaint as Exhibit A and Exhibit C.

95.   Paragraphs 2, 3, and 5 of Plaintiffs' mortgages requires that they maintain insurance on their property and provides that if they should fail to do so, the lender or servicer might obtain insurance coverage to protect its interest in the property, "force place" the coverage. Paragraph 5 of Plaintiffs' mortgages further provides that the lender may do and pay for whatever is necessary to protect its interest in the property and rights under the mortgage agreement, including protecting and/or assessing the value of the property and securing and/or repairing the property.

96.     Champion charges borrowers amounts for force-placed insurance that are more than the actual amount it pays for the coverage because the charges include unearned "commissions," "expense reimbursements," and other kickbacks, as well as subsidies for below-cost mortgage servicing functions that have little or nothing to do with the placement of force-placed insurance.   These costs are not costs of coverage, or related to borrowers' forced coverage, and are not applied to protecting Champion's rights or risk in the collateral for borrowers' mortgage loans.   They are simply bribes to keep Defendants' exclusive relationship in place.

97.     Through the kickbacks it receives, Champion pays less for force-placed coverage than it charges to Plaintiffs and other Class members.

98.     Champion breached the mortgage agreements by, among other things, charging Plaintiffs and absent class members amounts beyond the actual cost of coverage and more than what was reasonable or appropriate to protect its interest in the property.

99.     Plaintiffs and the Class members have suffered damages as a result of Champion's breach of contract.

**WHEREFORE**, Plaintiffs, on behalf of themselves and all similarly situated Class members, seek compensatory damages resulting from Champion's breach of contract, as well as injunctive relief preventing it from further violating the terms of the mortgages.  Plaintiffs further seek all relief deemed appropriate by this Court, including attorneys' fees and costs.

## COUNT II

### BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING
### (against Champion on behalf of the Nationwide Class and the New Jersey Subclass)

100.    Plaintiffs re-allege and incorporate paragraphs 1-91 above as if fully set forth herein and further allege as follows.

10O4392

101.   A covenant of good faith and fair dealing is implied in every contract and imposes upon each party a duty of good faith and fair dealing in its performance.   Common law calls for substantial compliance with the spirit, not just the letter, of a contract in its performance.

102.   Where an agreement affords one party the power to make a discretionary decision without defined standards, the duty to act in good faith limits that party's ability to act capriciously to contravene the reasonable contractual expectations of the other party.

103.   Plaintiffs' and the Class members' mortgage contracts allow Champion to force-place insurance coverage on borrowers in the event of a lapse in coverage, but do not define standards for selecting an insurer or procuring an insurance policy.

104.   Champion was afforded substantial discretion in force-placing insurance coverage.   It was permitted to unilaterally choose the company from which it purchased force-placed insurance and negotiate the price of the coverage it procured without restriction. Champion had an obligation to exercise its discretion in good faith, and not capriciously or in bad faith.

105.   The purpose of the mortgage clause allowing a lender or servicer, like Champion, to force place insurance is to protect the lender's interest in the property that is collateral for the mortgage loan.   Champion breached the implied covenant of good faith and fair dealing by making additional profits at Plaintiffs' expense by force-placing insurance on the property and receiving kickbacks on that insurance that bore no relation to protecting its interest in the property.

106.   Champion further breached the implied covenant of good faith and fair dealing by, among other things:

(a)   Manipulating the force-placed insurance market by selecting insurers (here, Great American and its affiliates) that will pay kickbacks to Champion not necessary to cover Champion's risk;

(b)  Exercising its discretion to choose an insurance policy in bad faith and in contravention of the parties' reasonable expectations, by purposefully selecting a force-placed insurer that will participate in its scheme and pay Champion kickbacks;

(c)  Assessing unnecessary charges against Plaintiffs and the Class which Champion attributes to the cost of the insurance coverage;

(d)  Receiving an effective rebate on the force-placed insurance through the kickback scheme but not passing on that rebate to the borrower, thereby creating the incentive to seek the highest-priced premiums possible;

(e)  Charging Plaintiffs and the Class for "commissions" or expense reimbursements when the insurance is prearranged and no commission is earned or due and no expenses are incurred in placing the certificate of insurance;

(f)  Charging Plaintiffs and the Class the cost of having Loan Protector perform its obligation of servicing its entire mortgage portfolio, which is not properly chargeable to Plaintiffs or the Class;

(g)  Seeking out an force-placed insurance insurer, here Great American, that will provide it the best deal in terms of below-cost mortgage servicing functions with the knowledge that these functions will be subsidized by the amounts paid for force-placed insurance; and

(h)  Charging Plaintiffs and the Class amounts attributable to Champion's captive reinsurance arrangement.

107.  As a direct, proximate, and legal result of the aforementioned breaches of the covenant of good faith and fair dealing, Plaintiffs and the Class members have suffered damages.

**WHEREFORE**, Plaintiffs, on behalf of themselves and all similarly situated Class members, seek a judicial declaration that Champion's conduct described above and the amounts charged to borrowers are in contravention of its duties of good faith and fair dealing. Plaintiffs also seek compensatory damages resulting from Champion's breaches of its duties. Plaintiffs further seek all relief deemed appropriate by this Court, including attorneys' fees and costs.

<u>**COUNT III**</u>

32

1004392

## VIOLATION OF THE NEW JERSEY CONSUMER FRAUD ACT
### (Leo and New Jersey Subclass against Champion)

108.   Plaintiff Leo re-alleges and incorporates paragraphs 1-91 above as if fully set forth herein and further alleges as follows.

109.   The New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1, *et seq.*, prohibits the "use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise and misrepresentation . . . in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby." N.J.S.A 56:8-2.

1004392

110.    Champion has engaged in, and continues to engage in, unconscionable commercial practices, deceptive acts, and misrepresentations in the conduct of its trade and/or commerce in the State of New Jersey.   Champion has an exclusive relationship with Loan Protector and Great American, whereby it would pay for high-priced force-placed insurance and charge that amount to Plaintiffs and the New Jersey Subclass, in order to receive improper compensation through illegal kickbacks in the form of rebates on the premiums through "commissions," "expense reimbursements," or captive reinsurance arrangements based on a percentage of the insurance policy's premium, that are paid to Champion or its affiliates. Champion further received below-cost mortgage servicing functions from Loan Protector and Great American as an incentive to maintain the exclusive relationship.

111.    It was an unconscionable commercial practice for Champion to accept kickbacks from Great American and Loan Protector for selecting the Great American insurance.   A New Jersey statute expressly bans Champion and Great American's conduct in paying, accepting and/or allowing the kickbacks identified in this lawsuit.   It states:

> no insurer . . . shall pay, allow, or give, or offer to pay, allow, or give, directly or indirectly, as an inducement to insurance, or after insurance has been effected, any rebate, discount, abatement, credit, or reduction of the premium named in a policy of insurance, or any special favor or advantage in the dividends or other benefits to accrue thereon, or any valuable consideration or inducement whatever, not specified in the policy of insurance, except to the extent that such rebate, discount, abatement, credit, reduction, favor, advantage, or consideration may be provided for in rating–systems filed by or on behalf of such insurer and approved by the commissioner.   No insured named in a policy of insurance . . . shall knowingly receive or accept, directly or indirectly, any such rebate, discount, abatement, or reduction of premium, or any such special favor or advantage or valuable consideration or inducement.

N.J.S.A. 17:29A-15.

112.    Champion also made numerous misrepresentations and deceptive statements in carrying out Defendants' scheme to defraud Leo and the New Jersey Subclass.   Loan Protector

10O4392

and Great American, with the approval of Champion, sent form letters to Plaintiff Leo on Champion letterhead, stating that Champion would purchase or renew force-placed coverage if voluntary insurance was not secured.   In the Defendants' letter to Leo and the New Jersey Subclass, Defendants state that that Champion had purchased lender placed hazard coverage. The letter also stated that the **"cost of any insurance we purchase will be added to your loan balance ...."** (emphasis added)

113.   Defendants' statement was false and misleading because Plaintiff Leo and Class Members were not charged the actual amount that Champion paid and the monthly mortgage reverse mortgage balances would not be increased by the cost of the insurance.   Instead, Champion imposed charges on Plaintiff and the New Jersey Subclass that were beyond the cost of insurance coverage..   Plaintiff Leo's monthly mortgage payments were increased not by the "cost" of the insurance, but by the cost of insurance plus gratuitous charges unrelated to force-placed insurance coverage, including kickbacks, reinsurance profits, and other wrongful benefits Great American and Loan Protector conveyed to Champion.   Letters containing these misrepresentations, deceptive statements, and false pretenses were sent to Plaintiff as described above.

114.   Defendants also deceived and misrepresented to Plaintiff Leo and the New Jersey Subclass in making these statements and creating the impression that they were being charged for the cost of insurance coverage.  In fact, they were being charged more because Champion had selected Great American insurance policies to obtain kickbacks and other wrongful benefits Loan Protector and Great American paid to Champion.

115.   Further, the policy that was "purchased" according to these letters, was actually already in place on the date of lapse according to the agreement between Great American and Champion.

116.   The NJCFA further provides that "[a]ny person who suffers an ascertainable loss of moneys or property, real or personal, as a result of the use or employment by another person any method, act, or practice declared unlawful under the [NJCFA] may bring an action or assert a counterclaim therefore in any court of competent jurisdiction. N.J.S.A. 56:9-19.

117.   Plaintiff Leo and the New Jersey Subclass are "person(s)" as that term is defined in N.J.S.A.56:8-1(d).

118.   Plaintiff Leo and the New Jersey Subclass have suffered an ascertainable loss of moneys or property as a direct and proximate result of the Champion's unconscionable practices. Champion had an exclusive relationship with Loan Protector and Great American, whereby Champion agreed to select the Great American force-placed insurance policies which carried exorbitant premiums, which Champion paid, and then imposed charges in excess of the cost of coverage on Plaintiff and the New Jersey Subclass.  Champion made this selection because Loan Protector and Great American would kick back a set percentage of the inflated premiums to Champion or its affiliates, as a commission, or enter into other arrangements that would deliver illicit financial benefits to Champion.  Pursuant to the terms of the standard form mortgage agreements used by Champion, it would purchase the required hazard coverage and charge the Plaintiff and New Jersey Subclass's escrow accounts for the cost of the insurance.  But, as part of the scheme by Defendants, Champion charged Plaintiff and the New Jersey Subclass more than its cost of coverage..

119.   Leo and the New Jersey Subclass have a private right of action against Champion and it entitles them to recover, in addition to their actual damages, a threefold award of the damages sustained by any person, interest, an award of reasonable attorney's fees, filing fees and reasonable costs of suit. N.J.S.A 56:8-19.

120.   Leo and the New Jersey Subclass have suffered, and will continue to suffer,

irreparable harm if these Defendants continue to engage in such deceptive, unfair, and unreasonable practices.

**WHEREFORE**, Leo, on behalf of himself and the New Jersey Subclass, demands judgment against Champion for compensatory damages, pre- and post-judgment interest, treble damages, attorneys' fees, injunctive and declaratory relief, costs incurred in bringing this action, and any other relief as this Court deems just and proper.

## COUNT IV

### VIOLATION OF THE NEW JERSEY CONSUMER FRAUD ACT
### (Plaintiff Leo and the New Jersey Subclass against Great American)

121.    Plaintiff Leo re-alleges and incorporates paragraphs 1-91 above as if fully set forth herein and further alleges as follows.

122.    The New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1, *et seq.*, prohibits the "use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation . . . in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby." N.J.S.A 56:8-2.

123.    Great American has engaged in, and continues to engage in, unconscionable commercial practices, deceptive acts and misrepresentations in the conduct of its trade and/or commerce in the State of New Jersey.  Great American had a relationship with Champion, whereby Great American incentivized Champion to select Great American's force-placed

1004392

insurance policies with exorbitant premiums with knowledge that the full, pre-rebate amount would be charged by Champion to Plaintiff and the New Jersey Subclass.  As compensation, Great American would kick back a set percentage of the force-placed charge to Champion or its affiliates as a commission or an expense reimbursement or enter into captive reinsurance agreements with Champion affiliates as a means to funnel financial benefits to them.

124.   It was an unconscionable commercial practice for Great American to pay kickbacks to Champion for selecting the Great American insurance.  A New Jersey statute expressly bans Great American's conduct in paying and/or allowing the kickbacks identified in this lawsuit.  It states:

> no insurer . . . shall pay, allow, or give, or offered to pay, allow, or give, directly or indirectly, as an inducement to insurance, or after insurance has been effected, any rebate, discount, abatement, credit, or reduction of the premium named in a policy of insurance, or any special favor or advantage in the dividends or other benefits to accrue thereon, or any valuable consideration or inducement whatever, not specified in the policy of insurance, except to the extent that such rebate, discount, abatement, credit, reduction, favor, advantage, or consideration may be provided for in rating–systems filed by or on behalf of such insurer and approved by the commissioner.  No insured named in a policy of insurance . . . shall knowingly receive or accept, directly or indirectly, any such rebate, discount, abatement, or reduction of premium, or any such special favor or advantage or valuable consideration or inducement.

N.J.S.A. 17:29A-15.

125.   Great American made numerous misrepresentations in carrying out Defendants' scheme to defraud Plaintiff Leo and the New Jersey Subclass.  Loan Protector and Great American, with the approval of Champion, sent form letters to Plaintiff on Champion letterhead, stating that Champion would purchase or renew force-placed coverage if voluntary insurance was not secured.  In the Defendants' letter to Leo and the New Jersey Subclass, Defendants state that that Champion had purchased lender placed hazard coverage.  The letter also stated that the **"cost of any insurance we purchase will be added to your loan balance ...."** (emphasis

1O04392

added)

126.   Defendants' statement was false and misleading because Plaintiff Leo and Class Members were not charged the amount that Champion ultimately paid and the mortgage balance would not be increased by the cost of the insurance.  Instead, Champion imposed charges on Plaintiff and the New Jersey Subclass beyond the cost of coverage, which were disguised as "commissions" and other costs.  In addition, the monthly payments were increased not by the "cost" of the insurance, but by the the cost of the insurance *plus* the amount kicked back to Champion.  Letters including these misrepresentations, deceptive statements, and false pretenses were sent to Plaintiff Leo as described above.  Upon information and belief, additional letters containing similar language were also sent to Plaintiff Leo.

127.   Defendants also deceived and misrepresented to Plaintiff Leo and the New Jersey Subclass in making these statements and creating the impression that they were being charged for the cost of the insurance coverage.  In fact, they were being charged an amount much greater than the actual cost of the insurance, and much more than their voluntary coverage, because Champion had selected Great American insurance policies to obtain kickbacks and other wrongful benefits Loan Protector and Great American paid to Champion.

128.   Further, the policy that was "purchased" according to these letters, was actually already in place on the date of lapse according to the agreement between Great American and Champion.

129.   The NJCFA further provides that "[a]ny person who suffers an ascertainable loss of moneys or property, real or personal, as a result of the use or employment by another person any method, act, or practice declared unlawful under the [NJCFA] may bring an action or assert a counterclaim therefore in any court of competent jurisdiction.  N.J.S.A. 56:9-19.

130.   Plaintiff Leo and the New Jersey Subclass are "person(s)" as that term is defined

in N.J.S.A.56:8-1(d).

131.    Plaintiff and the New Jersey Subclass have suffered an ascertainable loss of moneys or property as a direct and proximate result of the Great American's unfair and unconscionable practices.   Champion had an exclusive relationship with Loan Protector and Great American, whereby Champion agreed to select the Great American force-placed insurance policies that carried exorbitant premiums and charge the pre-rebate amount to Plaintiff Leo and the New Jersey Subclass.   Champion made this selection because Loan Protector and Great American would kick back a set percentage of the inflated premiums to Champion or its affiliates, as a commission, or enter into other arrangements that would deliver illicit financial benefits to Champion.   Pursuant to the terms of the standard form mortgage agreements used by Champion, it would purchase the required hazard coverage and charge the Plaintiff and New Jersey Subclass's escrow accounts for the cost of the insurance.   As part of the scheme by Defendants, Champion charged Plaintiff Leo and the New Jersey Subclass more than the cost of insurance.

132.    Plaintiff and the New Jersey Subclass have a private right of action against Great American and it entitles them to recover, in addition to their actual damages, a threefold award of the damages sustained by any person, interest, an award reasonable attorney's fees, filing fees and reasonable costs of suit. N.J.S.A 56:8-19.

133.    Plaintiff and the New Jersey Subclass have suffered and will continue to suffer irreparable harm if these Defendants continue to engage in such deceptive, unfair, and unreasonable practices.

**WHEREFORE,** Leo, on behalf of himself and the New Jersey Subclass, demands judgment against Great American for compensatory damages, pre- and post-judgment interest, treble damages, attorneys' fees, injunctive and declaratory relief, costs incurred in bringing this

10O4392

action, and any other relief as this Court deems just and proper.

## COUNT V

### VIOLATION OF THE NEW JERSEY CONSUMER FRAUD ACT
### (Plaintiff Leo and the New Jersey Subclass against Loan Protector)

134.   Plaintiff Leo re-alleges and incorporates paragraphs 1-91 above as if fully set forth herein and further alleges as follows.

135.   The New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1, *et seq.*, prohibits the "use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation . . . in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby." N.J.S.A 56:8-2.

136.   Loan Protector has engaged in, and continues to engage in, unconscionable commercial practices, deceptive acts, and misrepresentations in the conduct of their trade and/or commerce in the State of New Jersey.   Loan Protector has a relationship with Champion, whereby it acts as an agent for Great American and Champion in carrying out the scheme to incentivize Champion to select the Great American force-placed insurance policies with exorbitant premiums, knowing that Champion charges Plaintiff Leo and the New Jersey Subclass the full, pre-rebate amount.   As compensation, Loan Protector and Great American kick back a set percentage of Champion's premium to Champion or its affiliates as a commission or Great American enters into captive reinsurance agreements with Champion as a means to funnel financial benefits to it.   Loan Protector acts as Champion and Great American's agent in force-placing the Great American insurance policies, transmitting incentives between Defendants and administering the Champion force-placed insurance program.

41

137.   Loan Protector made numerous misrepresentations in carrying out the Defendants' scheme to defraud Plaintiff and the New Jersey Subclass.  Loan Protector and Great American, with the approval of Champion, sent form letters to Plaintiff Leo on Champion letterhead, stating that Champion would purchase or renew force-placed coverage if voluntary insurance was not secured.   Loan Protector and Great American, with the knowledge of Champion, sent letters to Leo and the New Jersey Subclass, stating that Champion had purchased lender placed hazard coverage.   The letter also stated that the **"cost of any insurance we purchase will be added to your loan balance …."** (emphasis added)

138.   Defendants' statement was false and misleading because the Plaintiff Leo and Class Members were not charged the full, pre-rebate amount that Champion paid and his mortgage balance would not be increased by just the cost of the insurance.  Instead, Champion charged Plaintiff Leo and the New Jersey Subclass the cost of insurance *plus* gratuitous amounts disguised as kickbacks, reinsurance profits and other wrongful benefits Great American and Loan Protector had conveyed to Champion.  In addition, the monthly payments were increased not by the "cost" of the insurance, but by the cost of insurance plus these additional amounts. Letters containing these misrepresentations, deceptive statements and false pretenses were sent to Plaintiff Leo as described above.

139.   Further, the policy that was "purchased" according to these letters, was actually already in place on the date of lapse according to the agreement between Great American and Champion.

140.   The NJCFA further provides that "[a]ny person who suffers an ascertainable loss of moneys or property, real or personal, as a result of the use or employment by another person any method, act, or practice declared unlawful under the [NJCFA] may bring an action or assert a counterclaim therefore in any court of competent jurisdiction.  N.J.S.A. 56:9-19.

141.    Plaintiff Leo and the New Jersey Subclass are "person(s)" as that term is defined in N.J.S.A.56:8-1(d).

142.    Plaintiff Leo and the New Jersey Subclass have suffered an ascertainable loss of moneys or property as a direct and proximate result of the Loan Protector's unfair and unconscionable practices.  Loan Protector, serving as agent for Champion and Great American, created an exclusive relationship between Champion, Loan Protector, and Great American, whereby Champion agreed to select the Great American force-placed insurance policies which carried exorbitant premiums and impose charges on Plaintiff and the New Jersey Subclass beyond Champion's cost of coverage.  Champion made this selection because Loan Protector and Great American would kick back a set percentage to Champion or its affiliates, as a commission, or enter into other arrangements that would deliver illicit financial benefits to Champion.  Pursuant to the terms of the standard form mortgage agreements used by Champion, it would purchase the required hazard coverage and charge the Plaintiff and New Jersey Subclass's escrow accounts the full, pre-rebate amount Champion had paid as a premium.

143.    Plaintiff Leo and the New Jersey Subclass have a private right of action against Loan Protector and it entitles them to recover, in addition to their actual damages, a threefold award of the damages sustained by any person, interest, an award reasonable attorney's fees, filing fees and reasonable costs of suit. N.J.S.A 56:8-19.

144.    Plaintiff Leo and the New Jersey Subclass have suffered, and will continue to suffer, irreparable harm if these Defendants continue to engage in such deceptive, unfair, and unreasonable practices.

**WHEREFORE,** Plaintiff Leo, on behalf of himself and the New Jersey Subclass, demands judgment against Loan Protector for compensatory damages, pre- and post-judgment interest, treble damages, attorneys' fees, injunctive and declaratory relief, costs incurred in

bringing this action, and any other relief as this Court deems just and proper.

## COUNT VI

### TORTIOUS INTERFERENCE WITH A BUSINESS RELATIONSHIP
(against Great American and Loan Protector on behalf of
the Nationwide Class and the New Jersey Subclass)

145.    Plaintiffs re-allege and incorporate paragraphs 1-91 above as if fully set forth herein and further allege as follows.

146.    Plaintiffs and the Class members have advantageous business and contractual relationships with Champion pursuant to the mortgage contracts.    Plaintiffs and the Class members have legal rights under these mortgage contracts.  For example, Plaintiffs and the Class members have a right not to be charged, in bad faith, amounts greater than the actual cost of force-placed insurance paid by Champion.

147.    Great American and Loan Protector had knowledge of the mortgage contracts and the advantageous business and contractual relationships between Plaintiffs and the Class and Champion.  Great American and Loan Protector were not parties to the mortgage contracts, nor were they third-party beneficiaries of the mortgage contracts.  Further, Great American and Loan Protector did not have any beneficial or economic interest in the mortgage contracts.

148.    Great American and Loan Protector intentionally and unjustifiably interfered with Plaintiffs' and the Class's rights under the mortgage contracts, as described above, by, *inter alia*, entering into an exclusive relationship with Champion and their affiliates, whereby Loan Protector provided Champion with below-cost mortgage servicing functions and Great American provided kickbacks to Champion in the form of "commissions" or "expense reimbursements," or ceded reinsurance premiums, among other things, which are purposefully and knowingly charged to Plaintiffs and the Class members, in exchange for the exclusive right to be Champion's force-place insurance provider.

10O4392

149.    As a result of Great American's and Loan Protector's interference with the Plaintiffs' mortgage agreements, Defendant Champion breached the express and implied terms of its mortgage contracts with Plaintiffs and members of the Class, by using funds that were designated to pay insurance, taxes, and other items, in order to pay non-designated costs of Defendants, including kickbacks, reinsurance premiums, and subsidized mortgage servicing functions (i.e. new loan boarding, loss drafts) that have no relation to the placement of force-placed insurance.

150.    Plaintiffs and the Class have been damaged as a result of Great American's and Loan Protector's interference with their mortgage contracts by being charged bad faith, exorbitant, and illegal charges in connection with the force-placed insurance in contravention of their rights under the mortgages.

**WHEREFORE**, Plaintiffs, on behalf of themselves and all Class members similarly situated, seek a judgment in their favor against Great American and Loan Protector for the actual damages suffered by them as a result of their tortious interference.  Plaintiffs also seek all costs of litigating this action, including attorneys' fees.

## COUNT VII

### UNJUST ENRICHMENT
### (against Champion on behalf of the Nationwide Class and the New Jersey Subclass)[6]

151.    Plaintiffs re-allege and incorporate paragraphs 1-91 above as if fully set forth herein and further allege as follows.

152.    Champion receives a rebate on the cost of the force-placed insurance coverage but does not pass that rebate on to its borrowers.  The rebates are provided to Champion in the form of unwarranted kickbacks, including "expense reimbursements" or "commissions," captive

reinsurance arrangements, and subsidized loan servicing costs. These benefits to Champion are paid through the amounts charged to Plaintiffs and the Class members for force-placed insurance.

153.    Champion entered into an agreement whereby the insurance vendors – here, Great American and Loan Protector – would provide below cost mortgage servicing activities and cover Champion's entire portfolio of loans with a master policy and issue certificates of insurance when a borrower's voluntary policy lapsed. Champion would then charge Plaintiffs and the Class amounts for the force-placed insurance that had been artificially inflated to include the kickbacks described above and then retain the amounts of those kickbacks for itself. The force-placed policies imposed on borrowers therefore cost less than what Champion had actually paid for them.

154.    These rebates directly benefitted Champion and/or its affiliates and were taken to the detriment of the borrower. The kickbacks (in the form of expense reimbursements, commissions, or reinsurance arrangements, as well as subsidized mortgage servicing functions) were subsumed into the charges to borrowers for the force-placed insurance and ultimately paid by them. Therefore, Champion had the incentive to seek out unreasonably inflated prices for the force-placed insurance and charge the inflated amounts to borrowers.

155.    Further, Champion was unjustly enriched through financial benefits in the form of increased interest income when the amounts for the force-placed insurance policies were added to the Class members' mortgage loans.

156.    As a result, Plaintiffs and the Class members have conferred a benefit on

---

[6]    Plaintiffs pleads their unjust enrichment claim against Champion in the alternative to their contractual claims against it.

Champion.

157.    Champion had knowledge of this benefit and voluntarily accepted and retained the benefit conferred on it.

158.    Champion will be unjustly enriched if it is allowed to retain the aforementioned benefits, and each Class member is entitled to recover the amount by which Champion was unjustly enriched at his or her expense.

159.    Had Plaintiffs known the true facts behind Defendants' force-placed insurance scheme, that the charges from Champion to them included the kickbacks described above, and that Champion was receiving an effective rebate on the charges but not passing on that rebate to them, they would have expected remuneration from Champion.

**WHEREFORE**, Plaintiffs, on behalf of themselves and all similarly situated Class members, demand an award against Champion in the amounts by which it has been unjustly enriched at Plaintiffs' and the Class Members' expense, and such other relief as this Court deems just and proper.

## COUNT VIII

### VIOLATIONS OF THE TRUTH IN LENDING ACT, 15 U.S.C. § 1601, et seq.
### (against Champion on behalf of the Nationwide class)

160.    Plaintiffs re-allege and incorporate paragraphs 1-91 above as if fully set forth herein and further allege as follows.

161.    Plaintiffs' and the Class Members' reverse mortgages were consumer credit plans secured by their principal dwellings, and were subject to the disclosure requirements of the Truth in Lending Act ("TILA"), 15 U.S.C.§ 1601, *et seq.*, and all related regulations, commentary, and interpretive guidance promulgated by the Federal Reserve Board.

162.    Champion is a "creditor" as defined by TILA because it owned Plaintiffs'

47

mortgages and changed the terms of the mortgage so as to create a new mortgage obligation, of which Champion was the creditor.

163.    Pursuant to TILA, Champion was required to accurately and fully disclose the terms of the legal obligations between the parties. *See* 12 C.F.R. § 226.17(c).

164.    Champion violated TILA, specifically 12 C.F.R. § 226.17(c), when it: (i) added force-placed insurance charges to Plaintiffs' mortgage obligations and failed to provide new disclosures; and (ii) failed at all times to disclose the amount and nature of the kickback, reinsurance, discount loan monitoring, and/or other profiteering involving Champion and/or its affiliates as a result of the purchase of force-placed insurance.

165.    When Champion changed the terms of Plaintiffs' mortgage to allow previously unauthorized kickbacks and insurance amounts in excess of its interests in the property, it changed the finance charge and the total amount of indebtedness, extended new and additional credit through force-placed insurance charges, and thus created a new debt obligation.  Under TILA, Champion was then required to provide a new set of disclosures showing the amount of the insurance charges (i.e. finance charges) and all components thereof.   On information and belief, to the extent a borrower cannot pay the expense up front, Champion increases the principal amount under Plaintiffs' and Class Member's mortgages when they force-placed the insurance, which was a new debt obligation for which new disclosures were required.

166.    Champion adversely changed the terms of Plaintiffs' loans after origination in order to allow a kickback on the force-placed insurance charges.  These kickbacks are not authorized in the mortgage in any clear and unambiguous way.  Champion never disclosed to borrowers the amount of the "commissions," "expense reimbursements," or other unearned profits paid to them or their affiliate.

167.    Champion also violated TILA by adversely changing the terms of Plaintiffs' loans

after origination by requiring and threatening to force-place more insurance than necessary to protect its interest in the property securing the mortgages.

168.    Acts constituting violations of TILA occurred within one year prior to the filing of the original Complaint in this action, or are subject to equitable tolling because Champion's kickbacks, reinsurance, and other unearned revenue-generating scheme was the subject of secret agreements among it and its affiliates and was concealed from borrowers.

169.    Plaintiffs and Class members have been injured and have suffered a monetary loss arising from Champion's violations of TILA.

170.    As a result of Champion's TILA violations, Plaintiffs and Class members are entitled to recover actual damages and a penalty of $500,000.00 or 1% of these Defendants' net worth, as provided by 15 U.S.C. § 1640(a)(1)-(2).

171.    Plaintiffs and Class members are also entitled to recovery of attorneys' fees and costs to be paid by Champion, as provided by 15 U.S.C. § 1640(a)(3).

**WHEREFORE**, Plaintiffs, on behalf of themselves and all Class members similarly situated, seeks a judgment in their favor against Champion awarding actual damages and a penalty of $500,000.00 or 1% of Champion's net worth, as provided by 15 U.S.C. §1640(a)(1)-(2), as well as of attorneys' fees and costs to be paid by Champion, as provided by 15 U.S.C. § 1640(a)(3).

## COUNT IX

### Violation of RICO, 18 U.S.C. § 1962(c)
### (against All Defendants on behalf of the Nationwide Class)

172.    Plaintiffs re-allege and incorporate paragraphs 1-91 above as if fully set forth herein and further allege as follows.

173.    At all relevant times, Defendants were employed by and associated with an illegal

enterprise, and conducted and participated in that enterprise's affairs, through a pattern of racketeering activity consisting of numerous and repeated uses of the interstate mails and wire communications to execute a scheme to defraud, all in violation of RICO, 18 U.S.C. § 1962(c).

174. The RICO enterprise which engaged in and the activities of which affected interstate and foreign commerce, was comprised of an association in fact of entities and individuals that included Champion, Great American, Loan Protector and their affiliates.

175. The members of the RICO enterprise had a common purpose: to increase and maximize their revenues by forcing Plaintiffs and Class members to pay amounts for force-placed insurance beyond what was authorized by their mortgage contracts through a scheme by which Champion was paid gratuitous kickbacks by its insurers that were disguised as legitimate costs. Defendants shared the bounty of their enterprise by sharing the illegal profits generated by the joint scheme.

176. The RICO enterprise functioned over a period of years as a continuing unit and maintained an ascertainable structure separate and distinct from the pattern of racketeering activity.

177. Champion, Loan Protector, and Great American conducted and participated in the affairs of this RICO enterprise through a pattern of racketeering activity that projects into the future, lasted more than one year, and that consisted of numerous and repeated violations of federal mail and wire fraud statutes, which prohibit the use of any interstate or foreign wire or mail facility for the purpose of executing a scheme to defraud, in violation of 18 U.S.C. §§ 1341 and 1343.

178. Champion, Loan Protector, and Great American directed and controlled the enterprise as follows:

a. Great American and Loan Protector developed and implemented guidelines and

standards for the timing and content of the cycle of deceptive letters sent to borrowers about force-placed insurance, to which Champion agreed;

b.  Great American and Loan Protector drafted the language of the fraudulent letters and correspondence to borrowers that was designed to deceive borrowers into believing that they were coming from Champion.  The letters fraudulently misrepresented the true "cost" of the insurance forced on their properties, and these letters were approved by Champion;

c.  Great American and Loan Protector ran the day-to-day operations of the force-placed scheme by, *inter alia*, tracking Champion's portfolio, mailing a cycle of form letters to borrowers notifying them that insurance coverage would be forced, and misrepresenting to borrowers both that they would be charged only the costs of coverage and that an agency would be paid a fee as compensation for securing an individual policy;

d.  Great American and Loan Protector paid kickbacks and provided below-cost mortgage servicing functions to Champion and its affiliates to maintain Defendants' exclusive relationship and keep their force-placed scheme moving forward;

e.  by directing, controlling, and creating an enterprise and arrangement by which Champion would receive unearned kickbacks;

f.  by directing, controlling, and creating an enterprise and arrangement by which Champion would receive illegitimate revenues (ultimately charged to borrowers) in the form of direct payments, reinsurance, expense reimbursements, or credits that were merely bribes to keep the exclusive relationship and not disclosing same to borrowers;

g.  by directing, controlling, and creating an enterprise and program by which Champion received rebates on the cost of the insurance but never charged the borrowers its actual or effective cost to procure the lender placed policies;

h.  by designing and directing an exclusive arrangement by which Defendants manipulated the force-placed insurance market in order charge borrowers more than Champion's actual cost for force-placed insurance.  Great American and Loan Protector benefited by securing business from Champion—they provide kickbacks to Champion at the expense of the borrowers who are charged more than Champion's cost of insurance coverage;

i.  by developing and implementing guidelines and criteria to determine when force-placed insurance is placed on a borrower's home, in what amount, for what coverages and for what period of time—all of which resulted in inferior and more expensive insurance that covered time periods where no claims were made and/or resulted in "double coverage;" and

j.  by developing and implementing an automated system to send the cycle of deceptive

letters to borrowers, to determine the type, time period and amount of substandard and unnecessary coverage, and to remove or charge borrowers' escrow accounts automatically for improper and inflated charges.

179.     In order to further their control and direction of the enterprise, Great American and Loan Protector paid bribes and kickbacks to Champion in the form of unearned commissions, direct payments, expense reimbursements, reinsurance payments, and below cost mortgage servicing.

180.     As part of and in furtherance of the scheme to defraud, Defendants made numerous material omissions and misrepresentations to Plaintiffs and Class members with the intent to defraud and deceive Plaintiffs and Class members.

181.     For example, Great American and Loan Protector, with the approval of Champion, sent form letters to Plaintiffs on Champion letterhead through the U.S. Mail, stating that Champion would purchase force-placed coverage if voluntary insurance was not secured by a certain date.   Specifically, to Plaintiffs, these Defendants represented in the letters that Champion would "purchase" the required coverage, which would cost Plaintiff Leo $1,521.00 and $1,453.00 annually (depending on the year) and the Marchion Plaintiffs $3,645.00 annually. In making these statements, Defendants knowingly and intentionally falsely stated that the amounts for force-placed insurance that Plaintiffs were charged represented the actual cost of the policies, when, in fact, Champion paid less for the insurance due to the inclusion of the kickbacks and other costs paid as bribes to Champion.   Defendants engaged in similar conduct as to all Class members.

182.     Defendants also knowingly and intentionally fostered the mistaken impression that Champion was actively "obtaining" a policy for the borrower when, in fact, no work was done and no expenses were incurred by Champion or its affiliates because a master policy was already in place and the force-placed insurance was issued pursuant to the Defendants'

automated procedures.

183.   Indeed, none of the letters sent to Plaintiffs disclosed the financial arrangement between the Defendants.

184.   Defendants had a duty to correct these misstatements and mistaken impressions. These misrepresentations and omissions were material, as they helped Defendants advance their scheme to charge Plaintiffs unreasonably high amounts for force-placed insurance and were designed to lull Plaintiffs and the Class into believing that the charges were legitimate.

185.   Plaintiffs and other homeowners would not have paid, or would have contested these specific charges had Defendants disclosed that the illegal bribes and kickbacks were included and that Champion was effectively paying less for the force-placed insurance than what it charged to Plaintiffs and the Class members.   Letters such as these were sent to Plaintiff Leo on January 21, 2015, January 21, 2016, and January 23, 2017, and to the Marchion Plaintiffs on November 6, 2015, December 7, 2015, and January 4, 2016.

186.   Great American and Loan Protector with the approval of Champion and on Champion letterhead, also sent Plaintiffs and the Class members force-placed insurance notices informing them that force-placed insurance had been purchased.   The letters represented that their mortgage balances will be increased to include the costs of the policies. Thus, Defendants knowingly and intentionally fostered the mistaken impression that the amounts for force-placed insurance that Plaintiffs and Class members were charged represented the true cost of the force-placed coverage.   In fact, the amounts charged to Plaintiffs were less than what Champion actually paid for the insurance coverage because they included "commissions," reinsurance profits, direct payments, "expense reimbursements," below-cost administrative services and other compensation returned to Champion but not passed on to Plaintiffs or the borrowers. Letters such as these were sent to Plaintiff Leo on January 21, 2015, January 21, 2016, and

January 23, 2017, and to the Marchion Plaintiffs on November 6, 2015, December 7, 2015, and January 4, 2016.

187.   The omission was material, as it gave Defendants a colorable reason to charge Plaintiffs unreasonably inflated amounts for insurance and would have influenced Plaintiffs' decisions whether to pay the charges or contest them.  Plaintiffs would not have paid or would have contested the charges for force-placed insurance had they known that the amounts charged to them were more than what Champion paid for the insurance or included kickbacks to Champion.  Letters such as these were sent to Plaintiff Leo on January 21,2015, January 21, 2016, and January 23, 2017, and to the Marchion Plaintiffs on November 6, 2015, December 7, 2015, and January 4, 2016.

188.   For the purpose of executing the scheme to defraud, Defendants sent, mailed, and transmitted, or caused to be sent, mailed, or transmitted, in interstate or foreign commerce numerous materials, including but not limited to the notices and letters described above informing Plaintiffs and Class members that they could charge Plaintiffs and Class members unreasonably high amounts for force-placed insurance.  This scheme to defraud proximately injured Plaintiffs and the Class because it prevented them from making an informed decision regarding whether to dispute or pay the force-placed charges, or whether to allow new coverage to be placed on their property.  Had they known that the charges had been artificially inflated to include kickbacks and other improper charges, they would not have paid them or would have contested them.  Defendants also transferred sums among themselves, including but not limited to "fees," or "commissions" to Loan Protector to cover the below-cost mortgage servicing functions it provided in furtherance of their scheme to defraud Plaintiffs and Class members, in violation of the wire fraud statutes.

189.   By reason and as a result of Defendants' conduct and participation in the

10O4392

racketeering activity alleged herein, Defendants have caused damages to Plaintiffs and Class members in the form of unreasonably high force-placed insurance premiums.

**WHEREFORE**, Plaintiffs and Class members seek compensatory damages, treble damages, and attorneys' fees and costs, pursuant to 18 U.S.C. § 1964(c).

## COUNT X

### Violation of RICO, 18 U.S.C. § 1962(d)
### (against all Defendants on behalf of the Nationwide Class)

190.    Plaintiffs re-allege and incorporate paragraphs 1-91 and 172-189 herein as if fully set forth herein.

191.    At all relevant times, Defendants were associated with the enterprise and agreed and conspired to violate 18 U.S.C. § 1962(d).  Defendants agreed to conduct and participate, directly and indirectly, in the conduct and affairs of the enterprise through a pattern of racketeering activity, in violation of 18 U.S.C. § 1962(d).

192.    Champion, Loan Protector, and Great American illegally agreed to violate RICO, 18 U.S.C. § 1962(d), by, *inter alia*:

- Through Loan Protector, agreeing that Great American would be Champion's exclusive force-placed insurance provider and would extract unauthorized amounts beyond the actual cost of coverage from Champion's customers. Defendants also agreed that Great American and Loan Protector would pay kickbacks to Champion and its affiliates;

- Agreeing that Loan Protector and Great American would administer the LPI program and monitor Champion's mortgage portfolios for lapses in voluntary insurance and would, with the approval of Champion, send misleading notices to borrowers.  These misleading notices would inform the borrowers that if new coverage were not procured, coverage would be force-placed, the borrower would be charged the "cost" of the insurance" and earned "commissions" payments would be paid to a Champion affiliate;

- Entering into illusory commission, reinsurance, or outsourcing agreements in order to disguise the true nature of the amounts charged to borrower under the guise of force-placed insurance; and

10O4392

- Agreeing to commit two or more predicate acts as described above in Count VIII.

193.    Through "soft-dollar" or other credits, or cash payments Champion affiliates, or Loan Protector, pass profits from this scheme to Champion.

194.    Defendants committed and caused to be committed a series of overt acts in furtherance of the conspiracy and to affect the objects thereof, including but not limited to the acts set forth above.

195.    As a result of Defendants' violations of 18 U.S.C. § 1962(d), Plaintiffs and Class members suffered damages in the form of unreasonably high force-placed insurance premiums.

**WHEREFORE,** Plaintiffs and Class members seek compensatory and treble damages, and attorneys' fees and costs, pursuant to 18 U.S.C. § 1964(c).

<u>**PRAYER FOR RELIEF**</u>

**WHEREFORE,** Plaintiffs, on behalf of themselves and all similarly situated individuals, demand judgment against Defendants as follows:

1)    Declaring this action to be a proper class action maintainable pursuant to Rule 23(a) and Rule 23(b)(1) and (2), or Rule 23(b)(3) of the Federal Rules of Civil Procedure and declaring Plaintiffs and their counsel to be representatives of the Class sought in this complaint;

2)    Enjoining Defendants from continuing the acts and practices described above;

3)    Awarding damages sustained by Plaintiffs and the Class members as a result of Champion's breaches of the subject mortgage contracts and the implied covenant of good faith and fair dealing, together with pre-judgment interest;

4)    Awarding Plaintiff Leo and the New Jersey Subclass compensatory and treble damages, injunctive relief, declaratory relief, attorneys' fees, and costs under NJCFA;

5)    Awarding damages sustained by Plaintiffs and the Class members as a result of

10O4392

the Great American's and Loan Protector's tortious interference with the mortgage agreement;

6)  Awarding Plaintiffs and Class members' costs and disbursements and reasonable allowances for the fees of Plaintiffs' and the Class's counsel and experts, and reimbursement of expenses;

7)  Awarding actual damages and a penalty of $500,000 or 1% of Champion's net worth as provided by 15 U.S.C. § 1640 (a)(1)-(2), and attorneys' fees and costs as provided by 15 U.S.C. § 1640 (a)(3);

8)  Awarding compensatory and treble damages, and attorneys' fees and costs under the federal RICO statute; and

9)  Awarding such other and further relief the Court deems just and equitable.

## DEMAND FOR JURY TRIAL

Plaintiffs and the Class request a jury trial for any and all Counts for which a trial by jury is permitted by law.

Respectfully submitted this.....day of August, 2017.

By: s/ Christopher B. Healy, Esq.
Christopher B. Healy, Esq.

10O4392

| | |
|---|---|
| Christopher B. Healy, Esq.<br>chealy@bathweg.com<br>**BATHGATE WEGENER & WOLFE**<br>One Airport Road, P.O. Box 2043<br>Lakewood, New Jersey 08701<br>Phone: (732)-363-0666;<br>Fax: (732)-363-9864<br>*Counsel for Plaintiffs* | Adam M. Moskowitz, Esq.<br>amm@kttlaw.com<br>Thomas A. Tucker Ronzetti, Esq.<br>tr@kttlaw.com<br>Rachel Sullivan, Esq.<br>rs@kttlaw.com<br>Robert J. Neary, Esq.<br>rn@kttlaw.com<br>**KOZYAK TROPIN &**<br>**THROCKMORTON LLP**<br>2525 Ponce de Leon Blvd., 9th Floor<br>Coral Gables, FL 33134<br>Telephone: (305) 372-1800<br>Facsimile:  (305) 372-3508<br>*Counsel for Plaintiffs*<br>(*pro hac vice* forthcoming) |
| Lance A. Harke, Esq.<br>lharke@harkeclasby.com<br>Howard M. Bushman, Esq.<br>hbushman@harkeclasby.com<br>**HARKE CLASBY & BUSHMAN LLP**<br>9699 NE Second Avenue<br>Miami Shores, New Jersey 33138<br>Telephone:    (305) 536-8220<br>Facsimile:    (305) 536-8229<br>*Counsel for Plaintiffs*<br>(*pro hac vice* forthcoming) | Joseph G. Sauder, Esq.<br>jgs@mccunewright.com<br>**McCUNE WRIGHT AREVALO, LLP**<br>555 Lancaster Avenue<br>Berwyn, PA 19312<br>Telephone: (610) 200-0580<br>*Counsel for Plaintiffs* |
| Aaron S. Podhurst, Esq.<br>Florida Bar No. 63606<br>apodhurst@podhurst.com<br>**PODHURST ORSECK, P.A.**<br>SunTrust International Center<br>One S.E. 3rd Ave., Suite 2700<br>Miami, Florida 33131<br>Telephone: 305-358-2800<br>Facsimile: 305-358-2382<br>*Counsel for Plaintiffs*<br>(*pro hac vice* forthcoming) | |

10O4392