UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

EDWARD LEO *et al.*,

              Plaintiffs,

v.

NATIONSTAR MORTGAGE LLC OF DELAWARE *et al.*,

              Defendants.

Civ. No. 18-4099

**OPINION**

THOMPSON, U.S.D.J.

## **INTRODUCTION**

This matter comes before the Court upon three Motions to Dismiss brought by Defendants Nationstar Mortgage LLC of Delaware d/b/a Champion Mortgage Company ("Nationstar") (ECF No. 111); Great American Assurance Company ("Great American") (ECF No. 112), and Willis of Ohio, Inc. d/b/a Loan Protector Insurance Services ("Willis") (collectively, "Defendants") (ECF No. 113). Plaintiffs Edward Leo, on behalf of the Estate of Dawn L. Leo, and Clifford J. Marchion and Donna Marchion, on behalf of themselves and all others similarly situated, (collectively, "Plaintiffs") oppose. (ECF No. 117.) The Court has decided the Motions based on the parties' written submissions and without oral argument, pursuant to Local Civil Rule 78.1(b). For the reasons stated herein, the Motions are granted.

## **BACKGROUND**

**I.    Plaintiffs' Force-Placed Insurance Policies**

Plaintiffs Leo and Marchion, two different homeowners, each took out reverse mortgages on their real properties located in New Jersey and North Carolina, respectively. (Am. Compl. ¶¶

1

1–2, ECF No. 58.) Defendant Nationstar, a lender, serviced these reverse mortgages, as memorialized in mortgage agreements. (*Id.* ¶¶ 3, 31.) Both mortgage agreements required Plaintiffs to maintain hazard insurance coverage. (*See id.* ¶¶ 31, 55, 67.) If Plaintiffs failed to maintain adequate hazard insurance, the mortgage agreements permitted Defendant Nationstar to purchase insurance for Plaintiffs and then charge Plaintiffs for the cost of that insurance—also known as "force-placed" or "lender-placed" insurance. (*See id.* ¶¶ 55, 67 (providing that Defendant Nationstar may "do and pay whatever is necessary to protect the value of the Property and [Defendant Nationstar]'s rights in the Property, including payment of . . . hazard insurance," and that "[Defendant Nationstar] shall advance and charge to [Plaintiffs] all amounts due to the Secretary for the Mortgage Insurance Premium").)

Both Plaintiffs Leo and Marchion's hazard insurance policies lapsed sometime in 2014 or 2015. (*Id.* ¶¶ 58–60, 68–70.) Shortly afterwards, Defendant Nationstar sent multiple letters to Plaintiffs warning them that if they did not obtain hazard insurance, Defendant Nationstar "may purchase insurance, at your expense, to protect [Defendant Nationstar's] interest in the property . . . [and] the cost of any insurance [that Defendant Nationstar] purchase[s] will be added to your loan balance." (*See id.* ¶ 68.) A second round of letters was sent about a month later, warning that Plaintiffs would "be billed for the cost of any insurance [Defendant Nationstar] purchase[s]"; the letters also provided the cost that would be billed. (*See id.* ¶ 69.)

After these warning letters, Defendant Willis, acting as a broker for Defendant Nationstar, obtained hazard insurance policies from Defendant Great American; Plaintiffs were charged for the cost. (*See id.* ¶¶ 34–35.) Plaintiffs, and the putative class, do not allege that Defendant Nationstar purchases an individual policy each time a borrower allows his hazard insurance to lapse. (*See id.* ¶ 39.) Plaintiffs instead contend that

> [Defendant Nationstar] purchases a master insurance policy from [Defendant] Great American that covers the entire [Defendant Nationstar] portfolio of mortgage loans. In exchange, [Defendant] Great American is given the exclusive right to force insurance on property securing a loan within the portfolio when the borrower's insurance lapses or the lender determines the borrower's existing insurance is inadequate. . . . Once a lapse is identified . . . . [i]n reality . . . the master policy is already in place and [Defendant Nationstar] does not purchase a new policy on the individual borrower's behalf. Rather, a certificate of insurance from the master policy is automatically issued by [Defendant] Great American or [Defendant Willis]. . . . Once a certificate is issued pursuant to the pre-existing master policy, coverage is forced on the property and [Defendant Nationstar] charges the borrower an amount it attributes to the "cost" of the [Defendant] Great American force-placed insurance . . . .

(*Id.* ¶¶ 34–40.) Defendant Nationstar sent letters to Plaintiffs informing them of such at the time of purchase. (*See id.* ¶¶ 60, 70.)

Defendant Great American, the insurer, paid Defendant Nationstar a commission fee for each new certificate of insurance issued. (*Id.* ¶¶ 41–43.) Plaintiffs allege that this payment functioned as a "kickback" insofar as the "payment is not compensation for work performed; it is an effective rebate on the premium amount owed by [Defendant Nationstar], reducing the [overall] cost of coverage that [Defendant Nationstar] pays to [Defendant] Great American" for the force-placed insurance policy. (*Id.*) Plaintiffs contend that the full cost of servicing these policies, including the commission payments, "is added into the force-placed amounts which are then passed on to the borrower," thus inflating the cost that the borrower must pay for the policy. (*Id.* ¶¶ 47–49.) State regulators in New Jersey and North Carolina approved these insurance rates beforehand, as required by law. (*See* N.J. Ins. Docs., Ex. C, ECF No. 112-5; N.C. Ins. Docs., Ex. D, ECF No. 112-6.)

## II.  Procedural History

Plaintiffs filed the Complaint on August 7, 2017 (ECF No. 1) and the Amended Complaint on January 19, 2018 (ECF No. 58). Plaintiffs allege ten counts against various

combinations of Defendants: (1) breach of contract against Defendant Nationstar (Am. Compl. ¶¶ 90–97); (2) breach of the implied covenant of good faith and fair dealing against Defendant Nationstar (*id.* ¶¶ 98–105); (3–5) violations of the New Jersey Consumer Fraud Act ("NJCFA"), N.J.S.A. § 56:8-1, against all Defendants (Am. Compl. ¶¶ 106–42); (6) tortious interference with a business relationship against Defendants Great American and Willis (*id.* ¶¶ 143–48); (7) unjust enrichment against Defendant Nationstar (*id.* ¶¶ 149–57); (8) violation of the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601, against Defendant Nationstar (Am. Compl. ¶¶ 158–69); and (9–10) violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1962(c), (d), against all Defendants (Am. Compl. ¶¶ 170–93).

Defendants initially filed motions to dismiss on February 20, 2018 (ECF Nos. 65, 68–69) but, to explore the possibility of settlement, the Court administratively terminated them on June 1, 2018 (*see* ECF Nos. 92–94). The parties were not able to settle and instead wanted to wait until the Eleventh Circuit ruled on a motion for rehearing *en banc* in *Patel v. Specialized Loan Servicing, LLC*, 904 F.3d 1314 (11th Cir. 2018), a factually similar force-placed insurance case. (*See* ECF No. 98.) Thus, pending the Eleventh Circuit's decision, the Court administratively terminated the action without prejudice on December 4, 2018. (ECF No. 99.) The Eleventh Circuit denied the motion for rehearing *en banc* on January 17, 2019, *Patel v. Specialized Loan Servicing, LLC*, 2019 U.S. App. LEXIS 1627, at *2 (11th Cir. Jan. 17, 2019), and, shortly afterwards, the parties indicated that they wish to move forward with briefing the Motions to Dismiss (*see* ECF Nos. 106–10).

On February 8, 2019, Defendants refiled their Motions to Dismiss. (ECF Nos. 111–13.) Plaintiffs opposed on March 11, 2019 (ECF No. 117), and Defendants replied in late March 2019 (ECF Nos. 121–22, 124, 128). This action was then reassigned to the Honorable Anne E.

Thompson on June 25, 2019. (ECF No. 133.) The Motions to Dismiss are currently before the Court.

## LEGAL STANDARD

To survive dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Schreane v. Seana*, 506 F. App'x 120, 122 (3d Cir. 2012) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). When considering a Rule 12(c) motion, a district court should conduct a three-part analysis. *Cf. Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). "First, the court must 'take note of the elements a plaintiff must plead to state a claim.'" *Id.* (quoting *Iqbal*, 556 U.S. at 675). Second, the court must accept as true all well-pleaded factual allegations and construe the complaint in the light most favorable to the plaintiff. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009); *see also Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 786–87 (3d Cir. 2016). However, the court may disregard any conclusory legal allegations. *Fowler*, 578 F.3d at 203. Finally, the court must determine whether the "facts are sufficient to show that plaintiff has a 'plausible claim for relief.'" *Id.* at 211 (quoting *Iqbal*, 556 U.S. at 679). A complaint which does not demonstrate more than a "mere possibility of misconduct" must be dismissed. *See Gelman v. State Farm Mut. Auto. Ins. Co.*, 583 F.3d 187, 190 (3d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 679).

## DISCUSSION

New Jersey and North Carolina, where the two real properties at issue are located, heavily regulate the insurance industry. In New Jersey, "every insurer shall, before using or applying any rate to any kind of insurance, file with the commissioner a copy of the rating-system upon which such rate is based." N.J.S.A. § 17:29A-6. The commissioner then reviews

each proposed rate and determines whether it is "unreasonably high or excessive." N.J.S.A. § 17:29A-7. Likewise, in North Carolina, "copies of the rates, loss costs, classification plans, rating plans and rating systems" must be filed with the commissioner. N.C. Gen. Stat. § 58-36-15(a). The commissioner then reviews each rate to determine whether it is "excessive, inadequate or unfairly discriminatory." N.C. Gen. Stat. §§ 58-36-10(1), 58-36-20(a).

The filed-rate doctrine holds that any "filed rate," one approved by the governing regulatory agency, "is per se reasonable and unassailable in judicial proceedings brought by ratepayers." *McCray v. Fid. Nat'l Title Ins. Co.*, 682 F.3d 229, 243 n.15 (3d Cir. 2012) (internal citation omitted). "[W]here the legislature has conferred power upon an administrative agency to determine the reasonableness of a rate, the rate-payer 'can claim no rate as a legal right that is other than the filed rate." *Patel*, 904 F.3d at 1321 (internal citation omitted) (en banc). "This holds true even 'where a regulated entity allegedly has defrauded an administrative agency to obtain approval of a filed rate' or where the rate filed with the agency resulted from price-fixing." *Id.* (internal citation omitted).

To determine whether a claim implicates the filed-rate doctrine, courts analyze two governing principles: (1) nonjusticiability and (2) nondiscrimination. *See In re N.J. Title Ins. Litig.*, 683 F.3d 451, 455 (3d Cir. 2012) ("[T]he doctrine is designed to advance . . . (1) 'preventing carriers from engaging in price discrimination as between ratepayers,' and (2) 'preserving the exclusive role of . . . agencies in approving rates . . . by keeping courts out of the rate-making process.'" (quoting *Marcus v. AT&T Corp.*, 138 F.3d 46, 58 (2d Cir. 1998))).

> The "nonjusticiability strand" recognizes that "(1) legislatively appointed regulatory bodies have institutional competence to address rate-making issues; (2) courts lack the competence to set . . . rates; and (3) the interference of courts in the rate-making process would subvert the authority of rate-setting bodies and

6

>undermine the regulatory regime." The "nondiscrimination strand" recognizes
>that "victorious plaintiffs would wind up paying less than non-suing ratepayers."

*Id.* (internal citations omitted).

I. **The Filed-Rate Doctrine Is Recognized in Force-Placed Insurance Claims in both Federal and State Common Law**

Because Plaintiffs allege both federal and state claims (*see* Am. Compl. ¶¶ 90–193 (alleging claims in breach of contract, breach of implied covenant of good faith, violations of the NJCFA, tortious interference, and unjust enrichment, but also violations of the TILA and RICO)), the Court must examine the filed-rate doctrine under both federal and state common law. For the reasons stated herein, the Court finds that the doctrine may be applied to both of Plaintiffs' federal- and state-law claims.

    A.    *Federal Claims*

It should be noted at the outset that "the Third Circuit has not yet decided whether the [filed-rate] doctrine bars the [force-placed insurance] claims at issue here." *Francese v. Am. Modern Ins. Grp., Inc.*, 2019 U.S. Dist. LEXIS 64929, at *12 (D.N.J. Apr. 16, 2019). Plaintiff, however, argues that *Alston v. Countrywide Financial Corp.*, 585 F.3d 753 (3d Cir. 2009), prevents the application of the filed-rate doctrine to their claims.

Although *Alston* implicates the filed-rate doctrine in the insurance context, Plaintiffs overstate the applicability of *Alston* in the instant action. In *Alston*, the plaintiffs sought to recover statutory treble damages pursuant to Section 8(d)(2) of the Real Estate Settlement Procedures Act of 1974 ("RESPA"), 12 U.S.C. § 2607(d)(2). *Alston*, 585 F.3d at 755. The plaintiffs alleged that their private mortgage insurance premiums—not force-placed insurance premiums—were channeled into an unlawful "captive reinsurance arrangement" by their mortgage lender. *Id.* The "overriding question" before the court was not whether the filed-rate

7

doctrine barred the plaintiffs' claims, but rather "whether Congress intended to create a private right of action for a consumer who alleges a violation of RESPA section 8 in connection with his or her settlement." *Id.* at 758. Only after the court answered in the affirmative did it, admittedly, "briefly address" the filed-rate doctrine, specifically focusing on Congress's intent in passing RESPA. *See id.* at 763–65 ("[I]f we were to find that the filed rate doctrine bars plaintiffs' claims, we would effectively be excluding [private mortgage insurance] from the reach of RESPA, a result plainly unintended by Congress."). Finding that the filed-rate doctrine was not applicable to the particular alleged scheme, the court's underlying rationale appeared to be tailored, and thus limited, to the contextual contours of RESPA. *See id.* at 764 (outlining four reasons why the doctrine did not apply to RESPA claims, such as "the purpose of RESPA" and the fact that "the measure of [statutory treble] damages is three times the price of [private mortgage insurance] . . . so there is no need to parse or second guess rates"). The court even cautioned that "[p]laintiffs may not sue under the veil of RESPA if they simply think that the price they paid for their settlement services was unfair," a suit presumably barred by the filed-rate doctrine. *See id.* (quoting *Kay v. Wells Fargo & Co.*, 247 F.R.D. 572, 576 (N.D. Cal. 2007)).

Some courts in this District have concluded that the filed-rate doctrine does not bar force-placed insurance claims,[1] but this Court found that the only two courts of appeals that have

---

[1] *See Gallo v. PHH Mortg. Corp.*, 916 F. Supp. 2d 537, 543–49 (D.N.J. 2012) (relying on *Alston* and denying motion to dismiss based on filed-rate doctrine); *see also Burroughs v. PHH Mortg. Corp.*, 2016 U.S. Dist. LEXIS 47475, at *7–10 (D.N.J. Apr. 7, 2016) (same); *Santos v. Carrington Mortg. Servs., LLC*, 2015 U.S. Dist. LEXIS 89285, at *6–10 (D.N.J. July 8, 2015) (declining to apply filed-rate doctrine because, in part, plaintiff challenged defendant's conduct, not the reasonableness or propriety of the rate itself); *DiGiacomo v. Statebridge Co., LLC*, 2015 U.S. Dist. LEXIS 82496, at *15–21 (D.N.J. June 25, 2015) (denying motion to dismiss).

directly addressed this precise question have found that it does bar these claims. *See Patel*, 904 F.3d at 1316 (affirming dismissal of force-placed insurance claims because plaintiffs alleged "textbook examples of the sort of claims that we have previously held are barred by the nonjusticiability principle" of the filed-rate doctrine); *Rothstein v. Balboa Ins. Co.*, 794 F.3d 256, 261 (2d Cir. 2015) (concluding that claims are barred, pursuant to the filed-rate doctrine, by both nonjusticiability and nondiscrimination principles). *Patel*, the more recent of the two, not only addressed nearly identical causes of action as Plaintiffs allege here,[2] but the court specifically distinguished *Alston*:

> While it is true that the Third Circuit [in *Alston*] stated that it is "absolutely clear that the filed rate doctrine simply does not apply here[,]" immediately preceding that statement, it said, "[i]t goes without saying that if we were to find that the filed rate doctrine bars plaintiffs' claims, we would effectively be excluding [private mortgage insurance] from the reach of RESPA, a result plainly unintended by Congress." Given that the filed-rate doctrine rests upon the principle that "[w]here the legislature has conferred power upon an administrative agency to determine the reasonableness of a rate, the rate-payer 'can claim no rate as a legal right that is other than the filed rate[,]'" *Alston* seems to be making the rather unremarkable point that the reach of the filed-rate doctrine can be circumscribed by legislation that confers to individuals a private right of action. Since nothing akin to RESPA's remedial provision exists here, *Alston* is not on point.

*Patel*, 904 F.3d at 1327 n.8 (internal citations omitted). And the only court in this District to address this issue after *Patel* has agreed with *Patel*'s analysis. *See Francese*, 2019 U.S. Dist. LEXIS 64929, at *1 (concluding that *Alston* is "inapposite" because it "discussed neither the nonjusticiability [n]or nondiscrimination principles" and thus dismissing force-placed insurance

---

[2] In *Patel*, the plaintiffs alleged breach of contract and implied covenant of good faith and fair dealing; tortious interference; unjust enrichment; and violations of TILA, RICO, and the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201. *Patel*, 904 F.3d at 1317.

9

claims because plaintiffs "implicat[ed] both the . . . principles").[3]  Therefore, the filed-rate doctrine is recognized in force-placed insurance claims in federal common law and thus may be applicable to Plaintiffs' federal claims.

      B.     *State Claims*

The filed-rate doctrine is also recognized in New Jersey and North Carolina state courts. "It is well established that the filed rate doctrine can serve as a defense against both federal and state action." *See N.J. Title Ins.*, 683 F.3d at 459 n.3 (citing *Am. Tel. & Tel. Co. v. Centraloffice Tel.*, 524 U.S. 214, 228 (1998)), 459–61 (noting that "state law does not preclude the doctrine's application to [plaintff's] New Jersey Antitrust Act claim").  "Federal courts that decide state law claims are required to apply the substantive law of the state whose laws govern the action." *Id.* at 459 (quoting *Parkway Garage, Inc. v. City of Phila.*, 5 F.3d 685, 701 (3d Cir. 1993)); *see also Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 78–80 (1938).  New Jersey and North Carolina both recognize the filed-rate doctrine, *see Weinberg v. Sprint Corp.*, 801 A.2d 281, 285–87 (N.J. 2002) (discussing applicability of filed-rate doctrine); *N.C. Steel v. Nat'l Council on Comp. Ins.*, 496 S.E.2d 369, 372–74 (1998) (adopting filed-rate doctrine), but the two states have neither rejected nor adopted its applicability in force-placed insurance claims.  Therefore, the Court incorporates the justifications expounded above, *see supra* Section I.A, and applies them to Plaintiffs' state-law claims.

## II.    The Filed-Rate Doctrine Bars All Claims in the Amended Complaint

Plaintiffs' allegations implicate both the nonjusticiable and nondiscrimination principles,

---

[3] As in *Patel*, the plaintiffs in *Francese* alleged nearly identical causes of action: breach of contract and implied covenant of good faith and fair dealing; tortious interference; and violations of TILA, RICO and the NJCFA.  *See Francese*, 2019 U.S. Dist. LEXIS 64929, at *7–8 (listing claims).

10

thus warranting dismissal.[4]  First, although Plaintiffs allege that they do not challenge Defendant Great American's rates for their force-placed insurance policies (*see* Am. Compl. ¶¶ 8, 52), the entirety of their allegations, taken together, belie this assertion.  Plaintiffs essentially challenge the reasonableness of Defendant Great American's filed rates, arguing that the insurance premiums were "exorbitant," "unreasonably inflated," and "unreasonably high."  (*See, e.g.*, Am. Compl. ¶¶ 32 (alleging that Defendants "manipulate[d] the force-placed insurance market and artificially inflate[d] the charges"), 116 (contending that Defendants "carried exorbitant premiums"), 148 (characterizing conduct as "being charged bad faith, exorbitant, and illegal charges"), 152 ("[Defendant Nationstar] had the incentive to seek out unreasonably inflated prices for the force-placed insurance and charge the inflated amounts to borrowers."), 187 (challenging "unreasonably high force-placed insurance premiums").)  They also accuse Defendants of "manipulating the force-placed insurance market" and receiving "kickbacks . . . disguised as unearned 'commissions.'"  (*See, e.g.*, *id.* ¶¶ 6–8, 13, 32, 52, 94, 164.)  Similar allegations were advanced in other cases that have been dismissed pursuant to the filed-rate doctrine.  *See Patel*, 904 F.3d at 1325–26 (finding that plaintiffs "repeatedly stat[ed] that they [were] challenging [defendant's] premiums" through phrases like "artificially inflated premiums," "unreasonably high force-placed insurance premiums," and "price manipulation"); *Francese*, 2019 U.S. Dist. LEXIS 64929, at *10–11 (barring claims because "the complaint [was] replete with allegations challenging the reasonableness of the LPI premiums charged," such as "manipulat[ing] the [LPI] market and inflat[ing] the amounts charged to [p]laintiff,"

---

[4] Defendants need only succeed on one of these principles to warrant dismissal.  *See McCray*, 682 F.3d at 242 (explaining that "the doctrine applies 'whenever either the nondiscrimination or the nonjusticiability strand . . . is implicated'" (quoting *Marcus*, 138 F.3d at 59)).

receiving "unearned commissions," and charging "excess of the actual cost" and "high premiums"). "[U]nder the nonjusticiability principle, it is squarely for the regulators to say what should or should not be included in a filed rate" as "whether insurer-provided services should have been reflected in the calculation of [the force-placed insurance premium] is not for us to say." *Rothstein*, 794 F.3d at 262; *see also N.J. Title Ins.*, 683 F.3d at 457 (noting that "federal courts are ill-equipped to engage in the rate making process").

Plaintiffs, however, argue that the inherent nature of force-placed insurance, being an "A-to-B-to-C" transaction, is determinative. (*See* Pls.' Br. at 16, 32–34.) They contend that the filed-rate doctrine prevents only a suit challenging the A-to-B portion of the transaction—the lender purchasing a policy from the insurer—as that is the only rate approved by state regulators. Plaintiffs instead, they insist, challenge only the B-to-C portion—the lender charging the borrower for the policy that the lender purchased from the insurer.

But Plaintiffs ignore their allegations advanced in the Amended Complaint. Although they allege that "[o]nce a lapse [in coverage] is identified . . . . the master policy is already in place and [Defendant Nationstar] does not purchase a new policy on the individual borrower's behalf," suggesting that this is the only actual filed rate, they also allege that Defendant Great American then issues a "certificate of insurance from the master policy" which "charges the borrower an amount it attributes to the 'cost' of the [Defendant] Great American force-placed insurance." (Am. Compl. ¶¶ 35, 38.) The cost charged to the borrower for the certificate of insurance is presumably subsumed within the cost charged to the lender for the master policy, which state regulators approved. *Cf. N.J. Title Ins.*, 683 F.3d at 456 ("The Supreme Court has indicated that the doctrine applies whenever rates are properly filed with a regulating agency."). Submissions to the state regulators even outline the contours of this relationship. (*See* N.J. Ins.

Docs. at 13–19, 22–32; N.C. Ins. Docs. at 12–22, 63–69.) "The distinction between an 'A-to-B' transaction and an 'A-to-B-to-C' transaction is especially immaterial in the [force-placed insurance] context" as "[t]he principles of nonjusticiability and nondiscrimination have undiminished force even when the rate has passed through an intermediary." *Rothstein*, 794 F.3d at 264–65; *see also Patel*, 904 F.3d at 1322 ("[W]e need not debate whether the FPI transaction consists of two, separate transactions . . . or a single 'A-to-B-to-C' transaction, where the [lenders] are merely a conduit between the insurers and the borrowers."). Simply put, Plaintiffs do not allege facts sufficient to infer that the cost charged to Plaintiffs was actually more than the cost of their share of the master policy; they instead protest that the cost of their share was simply high—a reality about which Defendants were warned shortly after their insurance policies lapsed. (*See, e.g.*, Letter to Pls. Clifford & Donna Marchion (Nov. 6, 2015), ECF No. 69-13 (cautioning that "[t]here are several disadvantages to you if we purchase insurance on your property," such as that "[t]he cost of any insurance we purchase . . . is typically more expensive then a policy you can obtain from your agent").)[5]

Second, Plaintiffs' allegations also implicate the nondiscrimination principle of the filed-rate doctrine. Plaintiffs seem to bootstrap their nondiscrimination argument to their nonjusticiability argument insofar as they restate the same underlying rationale for denying the instant Motions. (*See* Pls.' Br. at 36 ("The[] resolution [of Plaintiffs' claims] will not result in

---

[5] Defendant Great American cites to this letter in its opening brief, referencing an exhibit from a previous motion to dismiss. (*See* Def. Great Am.'s Br. at 5 n.4, ECF No. 112-1.) Although courts are typically constrained to the four corners of a complaint at this stage, courts may also consider materials that are "*integral to or explicitly relied* upon in the complaint." *In re Asbestos Prods. Liab. Litig.*, 822 F.3d 125, 133 & n.7 (3d Cir. 2016) (emphasis in original) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997)). Because Plaintiffs identify and quote portions of this precise letter in the Amended Complaint (*see* Am. Compl. ¶ 68), the Court may review it for purposes of these Motions.

[Defendant Nationstar] paying a lower rate than other similarly situated *lenders* because the master policy's commercial rates are not implicated." (emphasis in original)).) But Plaintiffs, were they successful in this litigation, would pay less than other borrowers subject to force-placed insurance policies. *Cf. Rothstein*, 794 F.3d at 236 ("While non-suing borrowers serviced by [the lender] would be billed at the filed [force-placed] rates, [p]laintiffs would enjoy the discount that [the insurer] allegedly provided to [the lender]"). Plaintiffs simply pay lip service to the contention that they "do not challenge [Defendant Nationstar]'s contractual right to obtain force-placed insurance" (Am. Compl. ¶¶ 8, 52). "[Plaintiffs] cannot use litigation as a means to obtain preferential rates." *Francese*, 2019 U.S. Dist. LEXIS 64929, at *12. "[C]hallenges to filed rates are barred if allowing individual ratepayers to attack the filed rate would undermine the . . . scheme of uniform rate regulation." *Rothstein*, 794 F.3d at 263 (internal quotation marks and citation omitted). Accordingly, because Plaintiffs' allegations implicate both the nonjusticiability and nondiscrimination principles of the filed-rate doctrine, their claims are barred.

## CONCLUSION

For the foregoing reasons, Defendants' Motions to Dismiss are granted. An appropriate Order will follow.

Date: <u>August 15, 2019</u>                                                                 <u>*/s/ Anne E. Thompson*</u>
                                                                                                               ANNE E. THOMPSON, U.S.D.J.